UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA

|  |  |
|---|---|
| IN RE:<br><br>HP/SUPERIOR, INC. d/b/a ST. FRANCIS HOME IN THE PARK,<br><br>    Debtor. | Chapter 11<br>Case No. 14-71797 (pwb)<br>(Jointly Administered) |

**NOTICE OF HEARING
ON MOTION FOR ALLOWANCE AND PAYMENT
OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §503(B)**

PLEASE TAKE NOTICE that Merwin LTC Pharmacy ("**Merwin**"), filed a *Motion for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §503(b)* (the "**Motion**") and related papers with the Court seeking an order authorizing directing payment of its administrative expense claim.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion in Courtroom 1401, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia, at 10:00 a.m. on May 24th, 2016.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

This 25th day of April, 2016.

_/s/ David A. Geiger_____
David A. Geiger
Georgia Bar No. 288898

GEIGER LAW, LLC                                  *Attorney for Merwin LTC Pharmacy*
1275 Peachtree Street, N.E.
Suite 525
Atlanta, Georgia 30309
(404) 815-0400
(404) 549-4312 (facsimile)
david@geigerlawllc.com

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| HP/SUPERIOR, INC. d/b/a ST. FRANCIS HOME IN THE PARK, | CASE NO. 14-71797-pwb |
| DEBTOR. | JUDGE BONAPFEL |

## MOTION FOR ALLOWANCE AND PAYMENT OF
## ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.S. §503(B)

COMES NOW Merwin LTC Pharmacy ("Merwin"), and makes this limited objection to the Motion to Compel Disbursement of Escrowed Property Subject to Lien filed by CSE Mortgage LLC ("CSE").

1.       HP/Superior, Inc. d/b/a St. Francis Home in the Park ("Debtor"), filed a Voluntary Chapter 11 Bankruptcy Petition in this Court on November 3, 2014 ("Petition Date").

2.       Merwin LTC Pharmacy and debtor HP/Superior, Inc. ("Debtor") are parties to a Pharmacy Services Agreement, entered into pre-petition in 2010 (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

3.       Among other things: 1) Section D.5. of the Agreement requires Debtor to pay for pharmacy goods and services; and 2) Section H.6. provides for recovery of reasonable attorneys' fees, costs, etc. to the prevailing party seeking to enforce the terms of the Agreement.

4.       Post-petition, during the Chapter 11 portion of the case, Debtor obtained goods and services from Merwin pursuant to the Agreement. Debtor paid for a portion of the goods and services received, but failed to remit payment in full.

5.     After application of available credits, $24,311.29 remains outstanding, due and payable to Merwin by Debtor for post-petition administrative claims. True and correct copies of the invoices evidencing the amounts outstanding for post-petition goods and services, and credits, are attached hereto collectively as Exhibit B. This amount is allowable and payable pursuant to section 503(b)(1), as an actual, necessary cost and expense of preserving the estate.

6.     11 U.S.C § 503(b)(1) allows Merwin an administrative claim in the amount of $24,311.29 because the pharmacy goods and services provided to Debtor under the Agreement were necessary for Debtor to continue to operate its business while in Chapter 11.

7.     Also, Merwin asserts a claim under section 503(b)(9) in the amount of $5,727.12. This amount is also claimed in the proof of claim filed by Merwin on account of its claim for unpaid pre-petition goods and services, in the event insufficient funds exists to pay it as an administrative claim.

8.     Merwin also requests recovery of its reasonable attorneys' fees under Section H.6. of the Agreement, for the services of its bankruptcy counsel in enforcing the Agreement during the Post-Petition period.  Merwin's attorney's fees sought in this Motion, all incurred post-petition, total $5,159.05 through the date of the filing of this Motion.

9.     Merwin further requests said claim be paid in accord with section 507(a)(2).

WHEREFORE, Merwin requests the Court enter an order allowing it an administrative claim in the amounts of $24,311.29 for goods and services, plus $5,727.12 under section 503(b)(9), plus $5,159.05 for attorneys' fees, for a total of $35,197.46.

This 25th day of April, 2016.

      /s/ David A. Geiger
David A. Geiger
Georgia Bar No. 288898

*Attorney for Merwin LTC Pharmacy*

GEIGER LAW, LLC
1275 Peachtree Street, N.E.
Suite 525
Atlanta, Georgia 30309
(404) 815-0400
(404) 549-4312 (facsimile)
david@geigerlawllc.com

# EXHIBIT A

# PHARMACY SERVICES AGREEMENT

## PHARMACY SERVICES AGREEMENT

THIS PHARMACY SERVICES AGREEMENT (the "Agreement") is entered into this

___ day of _____, 20_19 by and between _HP/ Superior, Inc  d/b/c_

_St. Francis in the Park Health & Rehab Cent_, a

_Georgia corporation_____ (the "Facility") and Robin Drug Corporation,

d/b/a Merwin LTC Pharmacy, a Minnesota corporation located at 1811 Old Highway 8, Suite B,

New Brighton, Minnesota 55112, licensed as a pharmacy in the State of Minnesota (the

"Pharmacy").

### RECITALS

1.      The Facility desires that the Pharmacy provide pharmacy goods and services to

the Facility, its residents, day-care participants, and any participants residing in affiliated senior

housing projects located on properties adjacent to that of the Facility, and the employees of these

facilities and projects (collectively, the "Clients").

2.      The Pharmacy desires to provide such pharmacy goods and services.

3.      The parties hereby enter into this Agreement setting forth their respective duties

and obligations with respect to the pharmacy goods and services to be provided to the Facility

and its Clients during the term of this Agreement.

4.      The term "Pharmacy" as used in this Agreement shall also include "Pharmacist"

where the context refers to those acts, duties or requirements to be provided by a Pharmacist.

NOW THEREFORE, in consideration of the foregoing premises, the mutual promises of

the parties hereinafter set forth in this Agreement and for other good and valuable consideration,

the mutual receipt and sufficiency of which are hereby acknowledged by the parties, the parties

hereby agree as follows:

1159891v4

A.    **SCHEDULES**.

    1.    The following Schedules attached to this Agreement (the "Schedules") are made a part of this Agreement:

- Schedule A-1 - Standard Service and Pricing

- Schedule A-2 - Medical Records Services and Pricing

- Schedule A-3 - Consulting Services and Pricing

- Schedule A-4 - Infusion Therapy Services and Pricing

B.    **EFFECTIVE DATE; ORIGINAL TERM**.

    1.    The term of this Agreement shall commence on April 1st, 2010 (the "Effective Date"), and shall continue until April 1st, 2013 (the "Original Term").  The term of this Agreement shall automatically renew for successive periods of three (3) year each upon the expiration of the Original Term or the preceding renewal term, unless terminated in accordance with Paragraph E of this Agreement.

C.    **PHARMACY OBLIGATIONS**.

    1.    The Pharmacy shall provide all forms, ledgers and other necessary administrative supplies that the Facility and Clients may require for the safe and efficient management of the Facility's pharmacy service.

    2.    The Pharmacy shall provide drugs, medications, supplies and sundries as needed by the Facility and the Clients.

    3.    The Pharmacy shall dispense medications to the Facility and Clients twenty four (24) hours per day, seven ( 7) days per week, including emergency orders.

    4.    The Pharmacy shall maintain a computer system, based solely upon information provided and updated by the Facility, containing drug profiles on all Facility Clients for whom

1159891v4

the Facility or its affiliates are responsible for care and for whom the Pharmacy provides goods

and services.  The Pharmacy shall take all reasonable and prudent actions to preserve and protect

the confidentiality of such records required under state law, federal law, payor protocols, and

policies of the Facility which policies have been previously disclosed in writing to the Pharmacy.

     5.     The Pharmacy shall cooperate with the professional staff of the Facility in

implementing and enforcing the Facility's internal policies regarding the dispensing of

medications.

     6.     The Pharmacy shall maintain a professional liability insurance policy ("Insurance

Policy") with individual incident coverage in the amount of  One Million dollars ($1,000,000)

and aggregate coverage in the amount of three million dollars ($3,000,000) while this Agreement

is in effect and for so long as is required to cover the services performed by Pharmacy under this

Agreement.  A copy of said insurance policy shall be given to Facility by Pharmacy at the

commencement of this Agreement and a certificate of insurance showing the aforementioned

insurance policy requirements shall be annually provided thereafter.

     7.     The Pharmacy shall not dispense any prescription drugs unless: (a) the Pharmacy

has on file the Client's medical history (including all physicians' orders, diagnoses, and the

resident's or Client's known allergies) ("Patient Files").  The Facility and Pharmacy shall be

responsible for updating the Patient Files in their possession or control.  The Patient Files shall

also contain the Client's status as either (i) a private payor, (ii) a State medicaid or medical

assistance recipient, or participant in any other State reimbursement program, (iii) a Medicare

recipient, or (iv) insured or member under any other third party payor.

8.      The Pharmacist shall review when required the Facility, medication rooms, medication carts and staff performance to evaluate compliance with local, State and Federal regulations and Facility policies and procedures.

9.      The Pharmacy shall perform physician order and/or medication audits upon requests.

10.      The Pharmacy shall, with the Director of Nursing, monitor and report on medication errors.

11.      The Pharmacy shall provide the additional pharmacy goods and services set out in the Schedules.

**D.      FACILITY OBLIGATIONS.**

1.      During the term of this Agreement, the Facility shall recommend to its Clients and encourage its Clients to purchase their requirements for pharmacy goods and services from the Pharmacy.  During the term of this Agreement, Pharmacy shall be the preferred provider of pharmacy goods and services to the Clients subject, however, to applicable laws relating to patient choice.

2.      The Facility shall obtain any necessary consents or authorizations for the pharmacy goods and services to be provided hereunder from the Clients or their legally responsible representatives.

3.      The Facility shall provide sufficient access to and adequate space within its properties to enable to Pharmacy to carry out its obligations under this Agreement.

4.      The Facility shall store and handle all medications provided by the Pharmacy in accordance with applicable rules and regulations and the instructions of the Pharmacy and the manufacturer(s) of such medications.

5.    The Facility shall perform the obligations set out on the Schedules, including the obligation to pay the amounts set out in the Schedules for pharmacy goods and services.

**E.    BILLING.**

1.    In the event of any dispute arising from any claim or bill submitted by the Pharmacy, the Pharmacy shall have reasonable access to all necessary Facility documents and records necessary to resolve any disputed claim or bill.

2.    Upon the admission or discharge of any Client (and promptly thereafter in the event of any change in status), the Facility will immediately supply the Pharmacy with:

      (a)    A copy of the admission information form for such Client;

      (b)    Current information pertaining to Client and any guarantor regarding the source of reimbursement for pharmacy charges;

      (c)    Information required for filing of claims with the Clients and third-party payors;

      (d)    A current list of the Clients physician's orders, diagnosis, and any known allergies; and

      (e)    Notice of a Client's discharge.

3.    The Pharmacy shall bill the Client or his or her legally responsible representative in accordance with this Paragraph E and the Schedules to this Agreement for pharmacy goods and services that the Pharmacy provides to the Facility's private pay Clients and other appropriate Clients.

4.    The Pharmacy's charges for the pharmacy goods and services provided to private pay Clients shall be the Pharmacy's usual and customary charge for unit dose medications.

1159891v4                                                5

5.    The Pharmacy shall bill, and receive payment from, the applicable State directly for items and services provided to Clients that are covered by a State medicaid or medical assistance program or by any other State reimbursement program.

6.    Where the Pharmacy becomes the payor for any service rendered hereunder, the Pharmacy is responsible for collecting any co-pay fees, if required.  Where the Facility bills the payor for the services, the Facility shall be responsible for collecting any co-pays, if required.

7.    The Pharmacy shall bill the Facility and be paid by the Facility in accordance with this Paragraph E of this Agreement for goods and services provided to the Facility's Client's that are eligible for coverage under any State medicaid or medical program or under any other State reimbursement program but for which the Pharmacy is precluded from billing the insurance provider directly.

8.    The Pharmacy shall bill, and be paid by, the Facility in accordance with this Paragraph E of this Agreement for items provided to the Facility's Clients that are eligible for coverage under Medicare.

9.    Items requested by and provided to the Facility by the Pharmacy which are intended to be used by the Facility and not by a particular Client will be billed to the Facility in accordance with this Paragraph E of this Agreement and the Pharmacy's charge shall be its usual and customary charge or such other charge that has been approved in writing at the time by the parties.

10.    The Pharmacy shall bill the Facility on a monthly basis for all charges that the Facility incurs under this Paragraph E and the Schedules to this Agreement that are not billed directly to the Client or his or her legally responsible representative.  The Pharmacy shall provide said billing to Facility within five (5) days after the end of the month for which goods or services

1159891v4                                                      6

are provided.  The Facility will pay the Pharmacy within forty- five (45) days of the billing

invoice date for goods and services provided under this Agreement.  Any amount due from the

Facility sixty (60) days after the billing date will be subject to a late charge of three quarters of a

percent (.75%) per month or a nine percent (9%) per annum.  If the billing is to an individual the

late charge shall be eight percent (8%) per annum.  Notwithstanding the foregoing, in no event

shall such late charge exceed the highest rate permitted by applicable law.

　　　　12.　　　If a private pay Client fails to pay any amount due to the Pharmacy within the

Pharmacy's standard payment terms for private pay Clients, the Pharmacy may suspend

providing pharmacy goods and services to such private pay Client unless the Facility agrees to be

responsible for the pharmacy goods and services provided to such private pay Client.  In such a

case, the Pharmacy will directly bill the Facility and the Facility shall pay for all pharmacy goods

and services provided to such private pay Client in accordance with this Paragraph E.

**F.**　　　**TERMINATION PROVISIONS.**

　　　　1.　　　Following the expiration of the Original Term, either party may terminate this

Agreement at any time, for any reason upon sixty (60) days written notice to the other party.

　　　　2.　　　Any party (the "Notifying Party") may notify the other in writing of a material

breach of this Agreement by such other party (the "Breaching Party").  Upon the receipt of

written notice of a material breach of this Agreement, the Breaching Party shall have thirty (30)

days from the receipt of said written notice to remedy the material breach of this Agreement

("Cure Period").  The failure to remedy a material breach of this Agreement during the Cure

Period, shall allow the Notifying Party to terminate this Agreement by giving written notice of

the termination of this Agreement to the Breaching Party after the Cure Period has expired.  If

the material breach of this Agreement is remedied during the Cure Period, this Agreement shall remain in full force and effect.

3.       The Facility may terminate this Agreement upon Pharmacy's failure to perform under this Agreement in such a manner that results in the immediate and serious threat to the health or welfare of Facility's Clients or staff and such breach continues uncured for ten (10) days after written notice of such breach is provided to Pharmacy.  If Pharmacy remedies said breach within the ten (10) day cure period, then this Agreement shall remain in full force and effect.

4.       Notwithstanding anything to the contrary contained herein, either party shall retain its rights to seek damages or other judicial relief for the wrongful termination or breach of this Agreement.

**G.       RELATIONSHIP OF THE PARTIES AND QUALIFICATION OF PHARMACY.**

1.       Both the Facility and the Pharmacy acknowledge that the services provided under this Agreement are those of an independent contractor.  The Pharmacy is not for any purpose a partner or employee of the Facility, and the Pharmacy is not under the direct supervision or direction of the Facility except as may be set forth in this Agreement or required by law.

2.       The terms of this Agreement do not establish or create any joint venture, partnership, association or other affiliation or similar relationship among the parties to this Agreement.  Neither party hereto shall have authority to bind the other with respect to any third party.

3.       This Agreement does not create any rights enforceable by any third party, including, without limitation, any Client or third party payor.

4.     The Pharmacy shall have sole discretion as to the means and methods of performing all obligations under this Agreement, subject only to its duty to comply with applicable laws, regulations and Facility policies.

5.     Pharmacy warrants that Pharmacy and its Pharmacist or other representative have all the necessary qualifications, certifications and/or licenses pursuant to federal and state law and regulations to provide the services required under this Agreement.

**H.     MISCELLANEOUS.**

1.     **Disclosure Agreement**.  If and to the extent that, Section 1861(v)(1)(I) of the Social Security Act (42 U.S.C. S 1395x(v)(1)(I) is applicable and pursuant to 42 C.F.R. §420.300 et seq., throughout the term of this Agreement and for a period of four (4) years after its termination, each of the parties agree that to the extent that the cost or value of goods or services under this Agreement is ten thousand dollars ($10,000) or more over a twelve (12) month period:

(a)     To keep and to make available, upon written request by the Secretary of the U.S. Department of Health and Human Services, or upon request by the Comptroller General, or any of their duly authorized representatives, this Agreement and the detailed books, documents and records that are necessary to certify the nature, value and extent of each party's costs in respect of this Agreement; and

(b)     To ensure that the foregoing obligation is also contractually imposed on any subcontractor or assignee of the Agreement, to the extent such subcontractor or assignee includes services, the cost or value of which is

ten thousand dollars ($10,000) or more over a twelve (12) month period

exceeds the threshold for applicability of the law as set forth above.

If the Facility is requested to disclose books, documents or records pursuant to this

Agreement for the purpose of an audit, the Facility shall notify the Pharmacy of the nature and

scope of the request.  Except as applicable law may require, this Agreement shall not be

construed to permit access to books, records and documents deemed by the Pharmacy or Facility

to be confidential, or to constitute any waiver of any evidentiary privilege.

2.    **Compliance with Law**.  Each party shall comply with all applicable federal, state

and local laws, rules and regulations now in effect or hereafter enacted during the term of this

Agreement, including, without limitation, laws, rules and regulations with respect to the

dispensing or prescribing of drug products, pharmaceutical billing or sales practices and

governmental reporting and disclosure requirements.  If there is a change in an existing law, rule

or regulation or the adoption of a new law, rule or regulation during the term of this Agreement

that alters a party's rights or responsibilities hereunder in any material respect (collectively, a

"Change in Law"), then upon request of the affected party, the parties will negotiate an

appropriate amendment to the terms of this Agreement in good faith so that during the remaining

term of this Agreement, the parties will be in the same position that they would have been

without the Change in Law.  If the parties are unable to agree upon such an amendment despite

good faith negotiations over a period of thirty (30) days, then either party may thereafter

terminate this Agreement by giving the other party thirty (30) days written notice of termination.

3.    **Access to Medical Records**.  The Facility shall give the Pharmacy reasonable

access to all nursing home resident medical records and other medical records necessary for the

performance of its duties under this Agreement.  Pharmacy agrees that it will furnish to the

1159891v4                                      10

Facility upon request all reciprocal information relating to the goods and services furnished to the Facility or its Clients; provided, however, that such access and disclosure is in compliance with all applicable state and federal laws and regulations.

4.    **Negotiations**.  The parties agree that each has negotiated in good faith and at arms length the terms of this Agreement.  The parties acknowledge that their intent in establishing the terms of this Agreement was to formulate a commercially reasonable contract for pharmacy goods and services at a cost that represents the fair market value for such services in the State in which the Facility is located.

5.    **Indemnification**.  Each party shall indemnify, defend and hold harmless the other party and their respective officers, directors, shareholders, employees and agents from and against any and all claims, damages, demands, actions, liabilities, penalties, costs and expenses, including, without limitation, reasonable attorneys' fees and disbursements of counsel arising out of the actual or alleged acts or omissions of such indemnifying party or its agents or employees in connection with this Agreement or any breach of any representation, warranty, covenant or agreement under this Agreement by the indemnifying party. Neither party shall have any liability for any special, incidental or consequently damages of the other party, even if the party has been advised of the possibility of such damages.

6.    **Attorney's Fees**.  In the event either party to this Agreement seeks to enforce any term or condition of this Agreement, the prevailing party, in addition to any judgment or award, shall be entitled to receive its reasonable attorneys' fees, costs, disbursements and paralegal fees from the non-prevailing party.

7.    **Authorization for Agreement**.  Each party represents and covenants that the execution, delivery and performance of this Agreement by it (a) are within its power, (b) have

been duly authorized by all necessary corporate or other actions, (c) do not require the consent of

any person or entity, and (d) do not violate any existing document, instrument, contract, written

order, judgment, law, decree, rule, award or regulation of any kind affecting it.  Each party

represents and covenants that this Agreement constitutes its valid and binding obligation,

enforceable in accordance with its terms.  The foregoing representations and covenants shall

survive the execution and delivery of this Agreement as well as the expiration or termination

hereof.  Each party agrees to undertake such further acts and to execute and deliver such further

documents and instruments as shall from time to time be necessary or reasonably required to

carry out and to give effect to the purpose and intent of this Agreement.

8.    **Binding Effect**.  The provisions of this Agreement shall be binding upon and

shall inure to the benefit of the parties hereto and their respective successors and permitted

assigns, but this provision shall not constitute a consent by a party to an assignment by the other

party.

9.    **Construction**.  The captions and headings used herein are for convenience of

reference only and shall not be construed in any manner to prescribe, interpret, define or

otherwise affect the content or meaning of any provision hereof.  Whenever the context so

requires, all words used in this Agreement in any gender will be deemed to include the

masculine, feminine and neuter genders, all singular words will include the plural, and all plural

words will include the singular.

10.    **Counterparts**.  This Agreement may be executed in counterparts, each of which

shall be an original, but all of which together shall constitute one and the same instrument.

11.    **Force Majeure**.  Neither party shall be liable for non-performance or delays in

delivering any item or service or meeting any obligation under this Agreement, to the extent

attributable to manufacturer or supplier delays or discontinuance of items to be provided under this Agreement, acts of governmental or quasi-governmental authorities, acts of God, or other causes beyond the responsible party's control.

12.    **Integration, Modification, Waiver and Interpretation**.  This Agreement contains the entire agreement and understanding between the parties and all prior agreements and understandings related hereto are merged herein.  No modification or waiver of any of the terms and conditions of this Agreement shall be effective unless it is in writing and sign by the parties hereto. Failure of any party hereto to exercise any right in the event of breach or default by the other party shall not constitute or operate as a waiver of such right.  This Agreement shall be interpreted in accordance with and governed for all purposes in accordance with the laws of the State of Minnesota without resort to its choice of law principles.

13.    **Severability**.  The provisions of this Agreement are hereby declared to be severable and should any clause or provision hereof be declared illegal or unenforceable, the remaining clauses and provisions of this Agreement shall remain in full force and effect.

14.    **Assignments**.  This Agreement shall not be assigned by either party without the prior written consent of the other party, which consent shall not be unreasonably withheld, delayed or conditioned.

15.    **Notices**.  All notices or other communications hereunder shall be in writing and shall be deemed duly given if delivered in person or sent by certified mail, return receipt requested, first-class, postage prepaid, (i) if to the Facility at

_____, Attention:

_____, (ii) if to the Pharmacy, at Robin Drug Corporation,

1811 Old Highway 8, Suite B, New Brighton, Minnesota 55112, Attention: Clifford F.

1159891v4                                                        13

Steinhauser, with a copy to its attorney, Moss & Barnett, A Professional Association, 4800 Wells

Fargo Center, 90 South Seventh Street, Minneapolis, Minnesota 55402-4129, Attention:

Mitchell H. Cox/Dave F. Senger unless notice of a change of address is given pursuant to the

provisions of this paragraph.

16.    **Discrimination**.  This Agreement shall be carried out in a nondiscriminatory

manner without regard to race, color, creed, handicap, ancestry, national origin, age, or gender.

**IN WITNESS WHEREOF**, the parties have entered into this Agreement as of the day,

month and year first above written.

**FACILITY**: HP/Superior, Inc d/b/a

St. Francis Health & Rehab Cent

a  Georgia  corporat

By: _____

Its: President

**PHARMACY**:

ROBIN DRUG CORPORATION
d/b/a Merwin LTC Pharmacy,
a Minnesota corporation

By: _____

Its: Secretary

1159891v4                                   14

SCHEDULE A-1

Standard Services and Pricing

1.      <u>Definition</u>.  "AWP" means the average wholesale price of a product (including, in the case if IV Products, the drug and the bag) as reported by First Databank.  AWP will be determined by the Pharmacy when not available from First Databank.  "Acquisition" means the Pharmacy's price.

2.      <u>Standard Services</u>.  The Pharmacy provides the following standard services to the Facility (the "Standard Services"):

     (a)      Process orders from the Facility for products and deliver the products to the Facility.  The Pharmacy will provide order processing and delivery services on a routine basis Monday through Sunday.  The Pharmacy will provide order processing and delivery services on an emergency basis, as needed, at any time.

     (b)      Supply emergency drug kits to the Facility and replenish the kits as necessary; provided, however, that the Pharmacy shall not be required to supply emergency drug kits to the Facility if the Facility is prohibited by applicable laws, codes or regulations from possessing or using emergency drug kits.

3.      <u>Pricing</u>.  For the pharmacy goods and services included in the Standard Services provided by the Pharmacy to the Facility, the Facility will pay the Pharmacy at the following rates:

     (a)      Client Specific Medication Products (including Private Pay Clients): **BRAND: AWP – 12.5% + $3.65**

     (b)      Client Specific Medication Products (including Private Pay Clients): **GENERIC: AWP - 35% + $3.65**

     (c)      Non-Client Specific/Bulk House Stock Products:.....Acquisition +30%

     (d)      Miscellaneous Supplies...........................................Acquisition +30%

     (e)      Med Carts and Fax machine Rental ..........................$ 196.05 per cart/month.

*Pricing will not be billed below state Medicaid rate.

1159891v4

SCHEDULE A-2

Medical Records Services and Pricing

1.    <u>Medical Records</u>.  On a monthly basis, the Pharmacy will provide the Facility with a medical records package to include the following information for each Client for the applicable month (the "Medical Records Services"):

(a)    physician order sheets
(b)    medication administration records
(c)    treatment sheets
(d)    psychotropic drug monitoring sheets

2.    <u>Pricing</u>.  For the pharmacy goods and services included in the Medical Records Services provided by the Pharmacy to the Facility, the Facility will pay the Pharmacy at the rate of $1.00 per Client per month.

(a)    Once per contract year, the Pharmacy may increase the pricing for Medical Records Services at a rate of 7% per year.

(b)    For additional forms requested by the Facility as part of the Medical Records Services, the Facility shall pay the Pharmacy as follows:

(i)    Telephone Order Sheets per 100 sheets ...................no charge.
(ii)    Other forms per 100 forms.........................................at cost.

1159891v4

SCHEDULE A-3

Consulting Services and Pricing

1.    <u>Consulting Services</u>.  The Pharmacy will provide a consultant pharmacist (or nurse) to perform the following consulting services ("Consulting Services") to the Facility:

     a.    Once each month, consult with the Facility's staff as to each Client's drug regimen and provide a written report of concerns of inappropriate utilization patterns (if any) to the Facility's Administrator, Director of Nursing Services or the Client's physician, as appropriate.

     b.    Consult with the Facility's staff as to its creation and maintenance of its pharmacy policy and procedure manual, including (without limitation) its creation and implementation of policies and procedures in respect of the distribution, control and use of prescription drugs in the Facility.

     c.    Consult with the Facility's staff as to its compliance with applicable regulations in respect of the record keeping requirements for and destruction of unused controlled substances.

     d.    Once each month, observe medication pass from the Facility to a Client, and note concerns related to quality assurance (if any) to the Facility's Administrator.

     e.    Consult with the Facility's staff as to its formulary management process.

     f.    On the Facility's request (but not more than once per calendar quarter), serve (in an advisory role) on the Facility's quality assurance and assessment committee.

     g.    On the Facility's request (but not more than once per calendar quarter) attend corporate level meetings with the Facility to discuss pharmacy issues.

     h.    On the Facility's request, provide additional Consulting Services at the price set forth below.  The additional Consulting Services will be governed by the terms of this Agreement.  The Facility may contact an Account Executive of the Pharmacy to discuss additional Consulting Services.

2.    <u>Pricing</u>.  For the pharmacy goods and services included in the Consulting Services provided by the Pharmacy to the Facility, the Facility will pay the Pharmacy at the rate of $4.00 per certified bed month.

For any additional Consulting Services the Pharmacy provides to the Facility, the Facility will pay the Pharmacy at the rate of $50.00 per hour.  An automatic escalation of the agreed upon charges will occur on an annual basis at the rate of 7% per year.

1159891v4

SCHEDULE A-4

Infusion Therapy Services and Pricing

1.    Definitions.  "AWP" means the average wholesale price of a product (including, in the case of IV products, the drug and the bag) as reported by First Databank.  "Acquisition" means the Pharmacy's price.

2.    Infusion Therapy Services.  The Pharmacy will provide the following infusion therapy services ("Infusion Therapy Services") to the Facility:

    (a)    Select and prepare parenteral products, as appropriate, and provide and maintain infusion administration products as necessary for infusion therapy.

    (b)    Supply an infusion therapy emergency kit to the Facility and replenish the kit as necessary.

    (c)    Provide a copy of the Pharmacy's Infusion Therapy Policy and Procedure Manual to the Facility.

    (d)    Provide Infusion Therapy Services on a routine basis Monday through Sunday. The Pharmacy will provide Infusion Therapy Services on an emergency basis, as needed, at any time (except for PICC insertion, which is not available after the Pharmacy's regular weekday hours or on weekends.)

3.    Pricing.  The Facility will pay the Pharmacy for Infusion Therapy Services at the rates determined by the attached tables.

    (a)    Notwithstanding anything to the contrary in this Schedule or in the attached tables, the Pharmacy may charge (and the Facility will pay) a minimum of Acquisition for any Infusion Therapy Service or Product.

    (b)    Pricing for Infusion Therapy Services includes compounding fee, pump, tubing and delivery and those standard supplies set out in the attached Standard Supplies Included in IV Pricing.

| Product or Service | Price |
|---|---|
| Hydration | $59/day |
| Antibiotics | AWP - 10% + $94/QD, $99/BID, $109/TID, $114>QID, $125/5ID, $132/6ID |
| TPN (Standard Formulation with lipids)<br>Non-Standard Additives<br>Procalamine | $150/day<br>AWP<br>AWP - 10% + $35/day |
| Misc. therapies (Heparin, Dobutamine, etc.) | AWP - 10% + 55/day |
| Pain management | AWP - 10% + $75/day |
| Chemotherapy | AWP - 10% + $55/day |
| IV Education | $100/hour |
| Peripheral IV Insertion | $125 - PHARMACY'S REGULAR BUSINESS HOURS<br>$187.50 - AFTER HOURS AND WEEKENDS, $250-OVERNIGHT |
| Midline Insertion | $175 - PHARMACY'S REGULAR BUSINESS HOURS<br>$262.50 - AFTER HOURS AND WEEKENDS, $350-OVERNIGHT |
| PICC Insertion | $250 - PHARMACY'S REGULAR BUSINESS HOURS<br>$337.50 AFTER HOURS AND WEEKENDS, $500-OVERNIGHT |

Note:  In no case will the Pharmacy's price be below state Medicaid rate.

1159891v4

## STANDARD SUPPLIES INCLUDED IN IV PRICING WITH SUPPLIES

Extra supplies will be charged at Acquisitions + 30%

| Item | Standard Usage |
|---|---|
| IV Start Kit | 1 q 3 days |
| Dressing Change Tray | 1 q 7 days |
| Needleless Injection Cap<br>    Routine meds/fluids<br>    Parenieral nutrition | <br>1 q 3 days<br>1 q 3 days |
| Extension Tubing | 1 q 3 days |
| Infusion Tubing<br>    Continuous<br>    Intermittent<br>    Parenieral Nutrition<br>    Lipids Only<br>    Secondary<br>    Pain Management | <br>1 q 3 days<br>1 q day<br>1 q day<br>1 per administration<br>1 q 3 days<br>1 per bag or cassette change |
| Peripheral IV Catheter | 1 q 3 days |
| IV Pump | 1/duration of therapy |
| Pre-filled Flush Syringes<br>    Peripheral line (saline only)<br>    Central lines (saline and heparin) | <br>2 per dose<br>2 saline (1 heparin per dose) |
| Multi-dose Vials | Dose dependant |
| Vial Adapter | 1per multi-dose vial |
| SQ Set for Pain Management | 1 q 3 days |

1159891v4

**EXHIBIT B**

**INVOICES**

1811 Old Hwy 8 NW
New Brighton, MN  55112-1828
PH 651-604-5475

# I N V O I C E

**Date**   04/01/2015

**To**   ST. FRANCIS- PARK IV MED-A

**Patient**

**Date of Service**

**03/30/2015**

| Item | Qty | Billed |
|------|-----|--------|
| SODIUM CL 0.9% PF 10ML SYR 0.9 % | 14 | $14.28 |
| *CEFTRIAXONE 2G/100ML NS QD | 4 | $480.00 |
| **Total Charge for Patient:** | | **$494.28** |

| | | |
|---|---|---|
| **Total Amount Due** | | **$494.28** |

**Batch Invoice No.: 487**

Case 14-71797-pwb    Doc 197    Filed 04/25/16    Entered 04/25/16 14:10:10    Desc Main
Document        Page 29 of 36

Merwin
1811 Old Hwy 8 NW
New Brighton, MN  55112-1828
PH 651-604-5475

# I N V O I C E

**Date**   04/01/2015

**To**   ST. FRANCIS- PARK IV STOCK

**Patient**

**Date of Service**

**03/30/2015**

| Item | Qty | Billed |
|------|-----|--------|
| SODIUM CL 0.9% PF 10ML SYR 0.9 % | 5 | $5.10 |
| E-KIT REPLACEMENT | 1 | $0.00 |

**03/30/2015**

| Item | Qty | Billed |
|------|-----|--------|
| SODIUM CL 0.9% PF 10ML SYR 0.9 % | 16 | $16.32 |
| INJECTION CAP - MICROCLAVE | 2 | $5.52 |
| DRESSING CHANGE KIT | 1 | $21.06 |

**Total Charge for Patient:    $48.00**

**Total Amount Due         $48.00**

**Batch Invoice No.: 539**

1811 Old Hwy 8 NW
New Brighton, MN  55112-1828
PH 651-604-5475

# I N V O I C E

**Date**    05/01/2015

**To**    ST. FRANCIS- PARK IV STOCK

**Patient**

**Date of Service**

**04/03/2015**

| Item | Qty | Billed |
|---|---|---|
| INJECTION CAP - MICROCLAVE | 2 | $5.52 |
| DRESSING CHANGE KIT | 1 | $21.06 |

**04/03/2015**

| Item | Qty | Billed |
|---|---|---|
| SODIUM CL 0.9% PF 10ML SYR ZR | 20 | $20.40 |

**04/13/2015**

| Item | Qty | Billed |
|---|---|---|
| SODIUM CL 0.9% PF 10ML SYR ZR | 30 | $28.80 |

**04/23/2015**

| Item | Qty | Billed |
|---|---|---|
| INJECTION CAP - MICROCLAVE | 3 | $8.28 |
| DRESSING CHANGE KIT | 1 | $21.06 |

**04/23/2015**

| Item | Qty | Billed |
|---|---|---|
| LINE MAINT. DOSE PER DIEM D.L. PICC | 14 | $30.66 |

**04/23/2015**

| Item | Qty | Billed |
|---|---|---|
| SODIUM CL 0.9% PF 10ML SYR ZR | 35 | $34.13 |

**04/30/2015**

| Item | Qty | Billed |
|---|---|---|
| DRESSING CHANGE KIT | 2 | $42.12 |

**Total Charge for Patient:**    **$212.03**

**Total Amount Due**    **$212.03**

**Batch Invoice No.: 541**

1811 Old Hwy 8 NW
New Brighton, MN  55112-1828
PH 651-604-5475

# I N V O I C E

**Date**     05/01/2015

**To**     ST. FRANCIS- PARK IV MED-A

**Patient**

**Date of Service**

### 04/03/2015

| Item | Qty | Billed |
|------|-----|--------|
| SODIUM CL 0.9% PF 10ML SYR 0.9 % | 15 | $15.30 |
| *CEFTRIAXONE 2G/100ML NS QD | 5 | $600.00 |

### 04/08/2015

| Item | Qty | Billed |
|------|-----|--------|
| SODIUM CL 0.9% PF 10ML SYR 0.9 % | 18 | $18.36 |
| *CEFTRIAXONE 2G/100ML NS QD | 6 | $720.00 |

### 04/14/2015

| Item | Qty | Billed |
|------|-----|--------|
| *CEFTRIAXONE 2G/100ML NS QD | 6 | $720.00 |

| | **Total Charge for Patient:** | **$2,073.66** |
|--|--|--|

### 04/10/2015

| Item | Qty | Billed |
|------|-----|--------|
| SODIUM CL 0.9% PF 10ML SYR 0.9 % | 40 | $40.80 |
| *ZOSYN 3.375G/100ML NS QID | 14 | $882.00 |

### 04/13/2015

| Item | Qty | Billed |
|------|-----|--------|
| SODIUM CL 0.9% PF 10ML SYR 0.9 % | 8 | $28.72 |
| *ZOSYN 3.375G/100ML NS QID | 4 | $252.00 |

### 04/14/2015

| Item | Qty | Billed |
|------|-----|--------|
| SODIUM CL 0.9% PF 10ML SYR 0.9 % | 24 | $23.04 |
| *ZOSYN 3.375G/100ML NS QID | 12 | $756.00 |

| | **Total Charge for Patient:** | **$1,982.56** |
|--|--|--|

### 04/15/2015

| Item | Qty | Billed |
|------|-----|--------|
| SODIUM CL 0.9% PF 10ML SYR 0.9 % | 9 | $8.64 |
| *CEFTRIAXONE 2G/100ML NS QD | 3 | $360.00 |

### 04/17/2015

| Item | Qty | Billed |
|------|-----|--------|
| SODIUM CL 0.9% PF 10ML SYR 0.9 % | 15 | $14.40 |
| *CEFTRIAXONE 2G/100ML NS QD | 5 | $600.00 |

### 04/22/2015

| Item | Qty | Billed |
|------|-----|--------|
| SODIUM CL 0.9% PF 10ML SYR 0.9 % | 15 | $14.63 |
| *CEFTRIAXONE 2G/100ML NS QD | 5 | $600.00 |

**Batch Invoice No.: 541**

1811 Old Hwy 8 NW
New Brighton, MN  55112-1828
PH 651-604-5475

# I N V O I C E

**Date**     05/01/2015

**To**      ST. FRANCIS- PARK IV MED-A

**Patient**

**Date of Service**

**04/27/2015**

| Item | Qty | Billed |
|------|-----|--------|
| SODIUM CL 0.9% PF 10ML SYR 0.9 % | 12 | $11.70 |
| *CEFTRIAXONE 2G/100ML NS QD | 4 | $480.00 |
| **Total Charge for Patient:** | | **$2,089.37** |

**Total Amount Due**                    **$6,145.59**

**Batch Invoice No.: 623**

1811 Old Hwy 8 NW
New Brighton, MN  55112-1828
PH 651-604-5475

# I N V O I C E

**Date**    06/01/2015

**To**    ST. FRANCIS- PARK IV STOCK

**Patient**

**Date of Service**

**05/07/2015**

| Item | Qty | Billed |
|------|-----|--------|
| DRESSING CHANGE KIT | 2 | $42.12 |

**05/07/2015**

| Item | Qty | Billed |
|------|-----|--------|
| SODIUM CL 0.9% PF 10ML SYR ZR | 35 | $33.95 |

**05/21/2015**

| Item | Qty | Billed |
|------|-----|--------|
| DRESSING CHANGE KIT | 2 | $42.12 |

**05/21/2015**

| Item | Qty | Billed |
|------|-----|--------|
| LINE MAINT. DOSE PER DIEM - D.L. PI | 14 | $30.66 |

**Total Charge for Patient:**    **$148.85**

**Total Amount Due**    **$148.85**



**Merwin**
**LTC Pharmacy**

**St Francis in the Park**
**Facility Statement: 3N-SFP**

1811 Old Hwy 8 NW
New Brighton, MN 55112
(651) 604-5400
(866) 452-0608

**Final Credits as of:**
**07/31/2015**

| Date | Rx # | Inv. Grp | Patient Name | Description | NDC | Qty | Amount |
|------|------|------|------|------|------|------|------|
| 4/9 | 758685 | M | | LEVETIRACETA TAB 250MG | 68180011216 | -9 | -16.82 |
| 4/9 | 758685 | M | | LEVETIRACETA TAB 250MG | 68180011216 | -2 | -3.74 |
| 5/9 | 775768 | M | | OXCARBAZEPIN TAB 300MG | 62756018488 | -11 | -18.87 |
| 5/28 | 787160 | M | | NAPROXEN   TAB 500MG | 53746019005 | -13 | -9.69 |
| 5/28 | 787160 | M | | NAPROXEN   TAB 500MG | 53746019005 | -14 | -10.44 |
| 6/4 | 791219 | M | | RISPERIDONE  TAB 3MG | 13668003905 | -6 | -34.83 |
| 6/5 | 791874 | M | | NAPROXEN   TAB 500MG | 53746019005 | -14 | -10.44 |
| 6/5 | 791875 | M | | OXCARBAZEPIN TAB 300MG | 62756018488 | -10 | -17.16 |
| 6/6 | 792574 | M | | RISPERIDONE  TAB 1MG | 68382011414 | -8 | -23.67 |
| 6/6 | 792575 | M | | SPIRONOLACT  TAB 25MG | 53746051110 | -6 | -1.69 |
| 6/6 | 792576 | M | | FOLIC ACID   TAB 1MG | 64125012710 | -11 | -0.57 |
| 6/8 | 793329 | M | | TRAZODONE   TAB 50MG | 603616032 | -7 | -1.88 |
| 6/10 | 794352 | M | | LEVOTHYROXIN TAB 100MCG | 378180910 | -10 | -3.66 |
| | | | | | | | -153.46 |
| 4/17 | 763529 | M | | DONEPEZIL   TAB 10MG | 43547027611 | -6 | -33.75 |
| 5/9 | 775798 | M | | SIMVASTATIN  TAB 80MG | 68382006916 | -1 | -1.28 |
| 5/20 | 782063 | M | | DONEPEZIL   TAB 10MG | 13668010310 | -4 | -20.25 |
| 5/25 | 785172 | M | | LEVOTHYROXIN TAB 50MCG | 781518110 | -12 | -4.03 |
| 5/28 | 787159 | M | | SIMVASTATIN  TAB 80MG | 16729000715 | -14 | -17.84 |
| 6/1 | 789015 | M | | METOPROLOL SUCC ER 25MG TAB | 62037083010 | -10 | -6.85 |
| | | | | | | | -84.00 |
| 5/4 | 772687 | M | | EPIPEN 2-PAK INJ 0.3MG | 49502050002 | -2 | -484.05 |
| | | | | | | | -484.05 |
| 2/26 | 735547 | M | | CYCLOBENZAPR TAB 10MG | 65162054150 | -6 | -4.26 |
| 3/20 | 748447 | M | | CIPROFLOXACN TAB 500MG | 55111012701 | -22 | -74.24 |
| 3/22 | 748850 | M | | SULFAMETHOXAZOLE/TMP 800/160 | 53746027205 | -19 | -14.25 |
| 3/22 | 748858 | M | | SIMVASTATIN  TAB 80MG | 68382006916 | -11 | -14.07 |
| 4/15 | 762472 | M | | CALCITRIOL  CAP 0.25MCG | 63304023901 | -2 | -2.03 |
| 4/15 | 762476 | M | | CYCLOBENZAPR TAB 10MG | 65162054150 | -30 | -21.29 |
| 5/18 | 780810 | M | | GABAPENTIN 300MG CAPS | 31722022205 | -11 | -9.53 |
| 5/19 | 781404 | M | | CARVEDILOL  TAB 12.5MG | 43547025610 | -14 | -19.44 |
| 5/19 | 781404 | M | | CARVEDILOL  TAB 12.5MG | 43547025610 | -14 | -19.44 |
| 5/19 | 781405 | M | | LAMOTRIGINE  TAB 100MG | 13668004701 | -14 | -43.22 |
| 5/29 | 787601 | M | | GABAPENTIN 300MG CAPS | 31722022205 | -8 | -6.93 |
| 5/30 | 788274 | M | | LAMOTRIGINE  TAB 100MG | 13668004701 | -1 | -3.09 |
| 5/30 | 788274 | M | | LAMOTRIGINE  TAB 100MG | 13668004701 | -5 | -15.44 |
| 6/5 | 792243 | M | | BUPROPN HCL  TAB 150MG XL | 10370010150 | -9 | -27.93 |
| 6/6 | 792443 | M | | CARVEDILOL  TAB 12.5MG | 43547025610 | -14 | -19.44 |
| 6/6 | 792443 | M | | CARVEDILOL  TAB 12.5MG | 43547025610 | -1 | -1.39 |
| 6/7 | 792741 | M | | TRAZODONE   TAB 50MG | 603616032 | -6 | -1.61 |
| 6/10 | 794209 | M | | GABAPENTIN  CAP 300MG | 45963055650 | -56 | -48.40 |
| 6/22 | 800494 | M | | METHADONE   TAB 10MG | 406577101 | -32 | -14.66 |
| | | | | | | | -360.66 |
| 4/17 | 763532 | M | | FUROSEMIDE   TAB 40MG | 781196610 | -13 | -1.18 |
| 4/17 | 763534 | M | | NITROSTAT   SUB 0.4MG | 71041813 | -25 | -13.42 |
| 4/19 | 764082 | M | | ONDANSETRON  TAB 4MG ODT | 68462015713 | -18 | -108.17 |
| 4/28 | 769298 | M | | FUROSEMIDE   TAB 40MG | 781196610 | -6 | -0.54 |
| 4/30 | 771139 | M | | LIDOCAINE   PAD 5% | 591352530 | -14 | -85.18 |
| 5/14 | 779233 | M | | LIDOCAINE   PAD 5% | 591352530 | -14 | -85.18 |
| 5/14 | 779246 | M | | NITROSTAT   SUB 0.4MG | 71041813 | -25 | -13.42 |
| 5/14 | 779249 | M | | ONDANSETRON  TAB 4MG ODT | 68462015713 | -29 | -174.27 |
| 5/14 | 779275 | M | | FUROSEMIDE   TAB 40MG | 781196610 | -5 | -0.46 |
| 6/5 | 792018 | M | | BUPROPN HCL  TAB 300MG XL | 10370010250 | -8 | -24.79 |
| 6/5 | 792019 | M | | BYSTOLIC   TAB 5MG | 456140530 | -9 | -29.19 |
| 6/5 | 792022 | M | | SERTRALINE  TAB 50MG | 65862001205 | -5 | -9.26 |
| 6/5 | 792023 | M | | SIMVASTATIN  TAB 10MG | 16729000417 | -6 | -4.39 |
| 6/5 | 792024 | M | | TRAZODONE   TAB 100MG | 603616128 | -7 | -2.76 |
| 6/5 | 792138 | M | | LEVOTHYROXIN TAB 75MCG | 781518210 | -5 | -1.85 |



**St Francis in the Park**
**Facility Statement: 3N-SFP**

**1811 Old Hwy 8 NW**
**New Brighton, MN 55112**
**(651) 604-5400**
**(866) 452-0608**

| **Final Credits as of:** |
| :---: |
| **07/31/2015** |

| Date | Rx # | Inv. Grp | Patient Name | Description | NDC | Qty | Amount |
|------|------|------|--------------|-------------|-----|-----|--------|
| 6/11 | 794922 | M | | CYCLOSPORINE CAP 25MG MOD | 172731046 | -36 | -32.17 |
| 6/13 | 795953 | M | | FUROSEMIDE   TAB 40MG | 781196610 | -2 | -0.18 |
| 6/16 | 797147 | M | | PREDNISONE   TAB 5MG | 54472825 | -13 | -1.91 |
| 6/18 | 798688 | M | | CALCITRIOL   CAP 0.25MCG | 63304023901 | -5 | -5.08 |
| | | | | | | | -593.40 |
| 4/17 | 763713 | M | | CEFTRIAXONE  INJ 1GM | 60505075204 | -13 | -388.27 |
| 4/17 | 763714 | M | | LIDOCAINE    INJ 1% | 409427601 | -20 | -0.94 |
| | | | | | | | -389.21 |
| 5/22 | 784492 | M | | CEPHALEXIN   CAP 500MG | 76439010250 | -8 | -6.29 |
| 5/22 | 784494 | M | | LISINOPRIL   TAB 10MG | 68180051403 | -9 | -5.76 |
| 5/22 | 784496 | M | | MIRTAZAPINE  TAB 15MG | 13107003105 | -10 | -17.55 |
| | | | | | | | -29.60 |
| 5/22 | 784472 | M | | AMLODIPINE   TAB 10MG | 31722023910 | -2 | -3.09 |
| | | | | | | | -3.09 |
| 4/14 | 761563 | M | | GABAPENTIN   CAP 100MG | 67877022205 | -1 | -0.35 |
| | | | | | | | -0.35 |

**New Charges/Credits Subtotal:**          **-2,097.82**

<u>**CERTIFICATE OF SERVICE**</u>

I, David A. Geiger, certify that I am over the age of 18 and that on April 25th, 2016 I have caused to be served the person(s) listed below with a copy of the within and foregoing NOTICE OF HEARING AND MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §503(B) by e-mail where indicated in accordance with BLR 5005-8 and by U.S. Mail, first class postage prepaid addressed as follows.

David S. Weidenbaum
Office of the U.S. Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

David.S.Weidenbaum@usdoj.com

Michael J. Bargar
Arnall Golden Gregory, LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363
michael.bargar@agg.com

Ashley Reynolds Ray
Scroggins & Williamson
1500 Candler Building
127 Peachtree Street, NE
Atlanta, GA 30303
rwilliamson@swlawfirm.com
aray@swlawfirm.com

Cathy L. Scarver
P. O. Box 672587
Marietta, GA 30006

HP/Superior, Inc.
5174 McGinnis Ferry Road
Suite 195
Alpharetta, GA 30005

G. Frank Nason, IV
Lamberth, Cifelli, Ellis &
Nason 1117 Perimeter
Center West Suite W 212
Atlanta, GA 30338
fnason@lcsenlaw.com

Superior Healthcare Investors, Inc.
1800 New York Avenue
Superior, WI 54880
aray@swlawfirm.com
rwilliamson@swlawfirm.com

Kevin A. Stine
Monarch Plaza, Suite 1600
3414 Peachtree Road, NE
Atlanta, GA 30326
kstine@bakerdonelson.com

This 25th day of April, 2016.

 /s/ David A. Geiger
David A. Geiger
Georgia Bar No. 288898

*Attorney for Merwin LTC Pharmacy*

GEIGER LAW, LLC
1275 Peachtree Street, N.E.
Suite 525
Atlanta, Georgia 30309
(404) 815-0400
(404) 549-4312    (facsimile)
david@geigerlawllc.com