UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| HP/SUPERIOR, INC. | : | CASE NO. 14-71797 - PWB |
| | : | |
| Debtor. | : | |

**MOTION FOR ORDER: (A) AUTHORIZING SETTLEMENT BETWEEN TRUSTEE, CSE MORTGAGE, LLC, AND THE CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF SUPERIOR HEALTHCARE INVESTORS, INC. UNDER FEDERAL RULES OF BANKRUPTCY PROCEDURE RULE 9019; (B) ESTABLISHING THE EXTENT AND PRIORITY OF THE SECURITY INTEREST OF CSE MORTGAGE, LLC IN ACCORDANCE WITH THE PROPOSED SETTLEMENT; (C) COMPELLING SCROGGINS & WILLIAMSON, P.C. TO TURN OVER PROPERTY OF THE ESTATE; (D) AUTHORIZING THE CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF SUPERIOR HEALTHCARE INVESTORS, INC. TO TURN OVER PROPERTY TO TRUSTEE; AND (E) AUTHORIZING TRUSTEE TO MAKE CERTAIN DISTRIBUTIONS OF PROPERTY OF THE ESTATE IN ACCORDANCE WITH THE PROPOSED SETTLEMENT**

COMES NOW S. Gregory Hays, Chapter 7 Trustee ("**Trustee Hays**") for the bankruptcy estate (the "**HP/Superior Bankruptcy Estate**") of HP/Superior, Inc. ("**HP/Superior**"), by and through the undersigned counsel, and files this *Motion for Order: (A) Authorizing Settlement Between Trustee, CSE Mortgage, LLC, and the Chapter 7 Trustee for the Bankruptcy Estate of Superior Healthcare Investors, Inc. under Federal Rules of Bankruptcy Procedure Rule 9019; (B) Establishing the Extent and Priority of the Security Interest of CSE Mortgage, LLC in Accordance with the Proposed Settlement; (C) Compelling Scroggins & Williamson, P.C. to Turn Over Property of the Estate; (D) Authorizing the Chapter 7 Trustee for the Bankruptcy Estate of Superior Healthcare Investors to Turn Over Property to Trustee; and (E) Authorizing Trustee to Make Certain Distributions of Property of the Estate in Accordance with the Proposed*

*Settlement* (the "**Settlement Motion**").   In support of the Settlement Motion, Trustee Hays respectfully shows the Court as follows:

**Jurisdiction and Venue**

1.      This Court has jurisdiction over this Settlement Motion under 28 U.S.C. §§ 157 and 1334.  Venue of this case in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief sought in this Settlement Motion is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and 11 U.S.C. § 363.   This Settlement Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

**Background**

2.      On November 3, 2014 (the "**HP/Superior Petition Date**"), HP/Superior filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended, modified, or supplemented, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division ("**Bankruptcy Court**"), initiating Chapter 11 Case No. 14-71797-PWB (the "**HP/Superior Bankruptcy Case**").

3.      Scroggins & Williamson, P.C. ("**Scroggins**") represents HP/Superior in the HP/Superior Bankruptcy Case.

4.      On January 6, 2015 (the "**SHI Petition Date**"), Superior Healthcare Investors, Inc. ("**SHI**") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, initiating Case No. 15-50439-PWB in the Bankruptcy Court (the "**SHI Bankruptcy Case**").

5.      Lamberth, Cifelli, Ellis & Nason, P.A. represents SHI in the SHI Bankruptcy Case.

6.      On February 3, 2015, the Bankruptcy Court entered an order [Doc. No. 59; Case No. 14-71797-PWB] authorizing the joint administration of the HP/Superior Bankruptcy Case and the SHI Bankruptcy Case for procedural purposes only pursuant to 11 U.S.C. § 1015(b).

7.      On October 27, 2015, the Bankruptcy Court entered an order [Doc. No. 141; Case No. 14-71797-PWB] directing the appointment of Chapter 11 trustees on behalf of HP/Superior and SHI.

8.      On October 30, 2015, the Bankruptcy Court entered an order [Doc. No. 146; Case No. 14-71797-PWB] approving Trustee Hays as Chapter 11 Trustee for HP/Superior, and on the same day the Bankruptcy Court entered an order [Doc. No. 23; Case No 15-50439-PWB] appointing Cathy L. Scarver ("**Trustee Scarver**") as Chapter 11 Trustee for SHI.

9.      On November 17, 2015, the Court entered an order [Doc. No. 168; Case No. 14-71797-PWB] converting the HP/Superior Bankruptcy Case and SHI Bankruptcy Case from cases under Chapter 11 to cases under Chapter 7 of the Bankruptcy Code effective as of November 4, 2015 and severing their joint administration.

10.     On November 23, 2015, the United States Trustee appointed Trustee Hays as the Chapter 7 Trustee in the HP/Superior Bankruptcy Case.  [Doc. No. 170; Case No. 14-71797-PWB].  Trustee Hays held and concluded the Section 341 meeting of creditors on January 12, 2016, and Trustee Hays is now the permanent Chapter 7 Trustee in the HP/Superior Bankruptcy Case.

11.     On November 23, 2015, the United States Trustee appointed Trustee Scarver as the Chapter 7 Trustee in the SHI Bankruptcy Case.  [Doc. No. 38; Case No. 15-50439-PWB]. Trustee Scarver held and concluded the Section 341 meeting of creditors on January 5, 2016, and Trustee Scarver is now the permanent Chapter 7 Trustee in the SHI Bankruptcy Case.

12.     Prior to the HP/Superior Petition Date, and for the majority of the time that the HP/Superior Bankruptcy Case was pending as a Chapter 11 case, HP/Superior operated a long-term nursing home facility located in the City of Superior, Douglas County Wisconsin on real property owned by SHI.

13.     On or about July 1, 2015, HP/Superior and SHI consummated a sale (the "**Sale**") of substantially all their assets pursuant to an order [Doc. 84; Case No. 14-71797-PWB] of the Bankruptcy Court.

14.     Prior to the closing of the sale, Superior WI Realty, LLC (the "**Purchaser**") paid an additional $50,000.00 to HP/Superior to extend the closing date of the sale from June 1, 2015 to July 1, 2015.  *See* [Doc. No. 94; Case No. 14-71797-PWB].

15.     By order entered July 1, 2015 [Doc. No. 94; Case No. 14-71797-PWB], the Bankruptcy Court approved the extension of the closing date through July 1, 2015.

16.     HP/Superior and SHI closed on the Sale with the Purchaser on or about July 1, 2015.

17.     After payment of various closing costs, including applicable taxes, Scroggins held $1,565,660.42 in escrow (the "**Sale Proceeds**"), of which $50,000.00 related to the payment by the Purchaser of the required amount to extend the closing date (the "**$50,000.00 Extension Funds**").  *See* [Doc. No. 97; Case No. 14-71797-PWB].

18.     Following an order by the Bankruptcy Court [Doc. No. 100; Case No. 14-71797-PWB], on or about August 31, 2015, Scroggins transferred $800,000.00 to CSE Mortgage, LLC ("**CSE Mortgage**" and collectively with Trustee Hays and Trustee Scarver, the "**Parties**") in partial satisfaction of the CSE SHI Claim (defined below).

19.    From the $50,000.00 Extension Funds, Scroggins paid $33,336.89 to Royalton Manor, LLC for cure costs related to an assumed executory contract, and $16,348.00 to itself in partial satisfaction of its allowed professional fees and expenses.

20.    Scroggins currently holds $765,975.53 in its trust account from the Sale Proceeds (the "**Remaining Sales Proceeds**"), of which $315.11 is the remaining portion of the $50,000.00 Extension Funds.

21.    On February 25, 2016, the State of Wisconsin turned over to Trustee Hays $2,851,208.68 from Medicaid reimbursements that the State of Wisconsin had been withholding from HP/Superior as a potential offset against unpaid bed tax assessments (the "**Medicaid Funds**").  Trustee Hays is currently holding the Medicaid Funds in his bank account for the HP/Superior Bankruptcy Estate.

22.    On December 10, 2014, CSE Mortgage filed a proof of claim [Claim No. 5-1; Case No. 14-71797-PWB] in the HP/Superior Bankruptcy Case for a secured claim in the amount of $133,065.92 (the "**CSE HP/Superior Claim**") and asserted HP/Superior's assets were pledged pre-petition as additional collateral for the CSE SHI Claim (described below).  The basis for CSE Mortgage's secured claim is a Revolving Credit and Security Agreement (the "**Credit Agreement**") entered into by HP/Superior and CapitalSource Finance, LLC, as predecessor in interest to CSE Mortgage.

23.    CSE Mortgage alleges that the amount of the CSE HP/Superior Claim has increased to $379,889.50 as of April 22, 2016 (the "**CSE HP/Superior Debt**") as a result of the continuing accrual of post-petition interest, loan fees, expenses, and attorney's fees as provided under the terms of the Credit Agreement and allowed under Section 506 of the Bankruptcy Code.

24.    On March 10, 2015, CSE Mortgage filed a proof of claim [Claim No. 2-1] in the

SHI Bankruptcy Case, which it amended on June 16, 2016 and asserted a claim with a secured status in the amount of $5,141,671.00 (the "**CSE SHI Claim**").

25.     Prior to the Petition Date, CapitalSource Finance, LLC, as predecessor in interest to CSE Mortgage, filed a UCC-1 (the "**CSE UCC-1**") to perfect its security interest in personal property of HP/Superior.

26.     Prior to the Petition Date, CSE Mortgage held a first-priority security interest in all real and personal property of SHI, including an assignment of leases and rents due under that certain lease agreement between SHI and HP/Superior dated as of May 1, 2004 (the "**Facility Lease**"), for which the assignment was filed on the public records of Douglas County Wisconsin on May 14, 2004 (the "**SHI Assignment of Leases and Rents**").

27.     On or about March 30, 2007, HP/Superior, SHI, and CSE Mortgage, among other parties, signed a cross-default agreement (the "**Cross-Default Agreement**").

28.     CSE Mortgage contends that, in addition to the security interest granted through the Credit Agreement and perfected through the filing of the CSE UCC-1, the Cross-Default Agreement secures the repayment of the debt represented by the CSE SHI Claim in property of the HP/Superior Bankruptcy Estate.

29.     Trustee Hays vigorously contests that the Cross-Default Agreement grants CSE Mortgage an additional security interest in property of the HP/Superior Bankruptcy Estate and contends that such document does not render HP/Superior liable for the repayment of the CSE SHI Claim.  The dispute over the extent, validity, and priority of the security interest purportedly granted by the Cross-Default Agreement, if any, is hereinafter referred to as the "**Cross-Default Issue**."

30.     Trustee Hays and Trustee Scarver have agreed between themselves and contend

that the HP/Superior Bankruptcy Estate is entitled to $159,383.60 of the Remaining Sales Proceeds and that the SHI Bankruptcy Estate is entitled to the remaining $606,591.93. CSE Mortgage contends that the HP/Superior Bankruptcy Estate is not entitled to any portion of the Remaining Sales Proceeds. *See, e.g.*, [Doc. No. 97]. The Parties' dispute over the allocation of the Remaining Sales Proceeds is hereinafter referred to as the "**Allocation Issue**."

31.     Trustee Scarver is holding approximately $1,062.73 from a National Bank of Commerce account (Account No. xxxx-2463), which funds were generated from the business operations of HP/Superior (the "**H/P Superior Funds**"). Trustee Scarver and Trustee Hays agree that the H/P Superior Funds, less any bank fees, are property of the H/P Superior Bankruptcy Estate. Trustee Scarver has agreed to turn over the H/P Superior Funds to Trustee Hays as part of the Settlement Agreement (defined below).

32.     On October 15, 2015, HP/Superior and SHI filed a complaint against CSE Mortgage seeking a surcharge under 11 U.S.C. § 506(c) (the "**Surcharge Issue**"), initiating the adversary proceeding styled as *HP/Superior, Inc., et al. v. CSE Mortgage, LLC* (Adv. Proceeding No. 15-5401-PWB) (the "**Adversary Proceeding**").

33.     On February 1, 2016, CSE Mortgage filed a motion [Doc. No. 185; Case No. 14-71797-PWB] (the "**Replacement Lien Motion**"), seeking a replacement lien or, alternatively, an equitable lien in post-petition accounts receivable of HP/Superior (the "**Replacement Lien Issue**" and collectively with the Cross-Default Issue, the Allocation Issue, and the Surcharge Issue, the "**CSE Disputes**").

34.     On February 25, 2016, the Bankruptcy Court entered an order [Doc. No. 190; Case No. 14-71797-PWB] (the "**SHI Admin Claim Order**") in the HP/Superior Bankruptcy Case granting the SHI Bankruptcy Estate an allowed Chapter 11 administrative expense claim in

the amount of $463,979.83 against the HP/Superior Bankruptcy Estate (the "**SHI Admin Claim**"), which, in accordance with the terms of the SHI Admin Claim Order, is subordinate to all Chapter 7 administrative expenses of the HP/Superior Bankruptcy Estate, and which is to be paid pro rata with all other allowed Chapter 11 administrative expenses against the HP/Superior Bankruptcy Estate.

35.    On April 25, 2016, Trustee Scarver filed a proof of claim in the HP/Superior Bankruptcy Case as a general unsecured pre-petition claim in the amount of $2,662,000.00 (the "**SHI Proof of Claim**"), as more particularly described in Claim 37 on the claims register in the HP/Superior Bankruptcy Case.

**The Proposed Settlement**

36.    The Parties have entered into a Settlement Agreement, subject to Court approval, resolving the CSE Disputes.    A copy of the Settlement Agreement is attached hereto and incorporated herein by reference as Exhibit "A" (the "**Settlement Agreement**").    The material terms of the Settlement Agreement are outlined below:[1]

    a.    Effective upon the Settlement Orders becoming final, the Remaining Sales Proceeds shall be allocated as follows: (1) $707,687.83 shall be allocated to the SHI Bankruptcy Estate (the "**SHI Sales Proceeds**"); and (2) $58,287.70 shall be allocated to the HP/Superior Bankruptcy Estate (the "**HP/Superior Sales Proceeds**").[2]

    b.    Effective upon the Settlement Orders both becoming final, the Parties agree that CSE Mortgage shall have a first-priority security interest in and to the HP/Superior Sales Proceeds and the Medicaid Funds in an amount equal to $755,677.20.    As part of the HP/Superior Settlement Approval Motion, Trustee Hays will request that the Bankruptcy Court determine, as part of the HP/Superior Settlement Approval Order, that CSE Mortgage

---

[1]    The following is a summary of the Settlement Agreement and is not intended to be comprehensive.    To the extent that anything in this summary is contrary to the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

[2]    Capitalized terms not defined in this Settlement Motion shall have the meaning ascribed to them in the Settlement Agreement.

has a first-priority security interest in and to the HP/Superior Sales Proceeds and the Medicaid Funds in an amount equal to $755,677.20 (the "**CSE-HP/Superior First Priority Security Interest**").

c.  Effective upon the Settlement Orders both becoming final, the Parties agree that CSE Mortgage shall have a first priority security interest in and to the SHI Sales Proceeds in an amount equal to $707,687.83.  As part of the SHI Settlement Approval Motion, Trustee Scarver will request that the Bankruptcy Court determine, as part of the SHI Settlement Approval Order, that CSE has a first priority security interest in and to the SHI Sales Proceeds in an amount equal to $707,687.83 (the "**CSE-SHI First Priority Security Interest**").

d.  Effective upon the Settlement Orders both becoming final, the HP/Superior Bankruptcy Estate shall have a carve-out from the CSE-HP/Superior First Priority Security Interest in the amount of $187,089.03 (the "**HP/Superior Estate Carve-Out**").  For avoidance of doubt, it is the intent of the Parties that upon the Settlement Orders both becoming final, the HP/Superior Bankruptcy Estate shall have a first priority security interest and lien in the HP/Superior Sales Proceeds and the Medicaid Funds in the amount of $187,089.03, which shall be distributed by Trustee Hays in accordance with 11 U.S.C. § 726.

e.  Effective upon the Settlement Orders both becoming final, the SHI Bankruptcy Estate shall have a carve-out from the CSE/SHI First Priority Security Interest in the amount of $55,000.00 (the "**SHI Estate Carve-Out**").  For avoidance of doubt, it is the intent of the Parties that upon the Settlement Orders both becoming final, the SHI Bankruptcy Estate shall have a first priority security interest and lien in the SHI Sales Proceeds in the amount of $55,000.00, which shall be exclusively used first for payment of allowed Chapter 7 administrative expense claims and then for allowed Chapter 11 attorney's fees for Trustee Scarver's attorneys and SHI's attorneys.

f.  Within five (5) business days of the later of: (a) Trustee Hays's receipt of the HP/Superior Sales Proceeds in the amount of $58,287.70 from Scroggins; or (b) the Settlement Orders both becoming final, Trustee Hays shall pay $559,889.50 (the "**CSE-HP/Superior Claim Payment**") to CSE Mortgage by delivering a check made payable to "CSE Mortgage, LLC" in the amount of $559,889.50 to Kevin A. Stine at the following address: Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 3414 Peachtree Rd, NE, Suite 1600, Monarch Plaza, Atlanta, GA 30326.  Trustee Hays shall request authority from the Bankruptcy Court to make the CSE-HP/Superior Claim Payment in the HP/Superior Settlement Approval Motion.

g.  Within five (5) business days of the later of: (a) Trustee Scarver's receipt of the SHI Sales Proceeds in the amount of $707,687.83 from Scroggins; or (b) the Settlement Orders both becoming final, Trustee Scarver shall pay $652,687.83 (the "**CSE-SHI Claim Payment**") to CSE Mortgage by delivering a check made payable to "CSE Mortgage, LLC" in the amount of $652,687.83 to Kevin A. Stine at the following address: Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 3414 Peachtree Rd, NE, Suite 1600, Monarch Plaza, Atlanta, GA 30326.  The CSE-SHI Claim Payment shall reduce the CSE-SHI Claim on a dollar for dollar basis. Trustee Scarver shall request authority from the Bankruptcy Court to make the CSE-SHI Claim Payment in the SHI Settlement Approval Motion.

h.  Within five (5) business days of the Settlement Orders both becoming final, Trustee Scarver shall turn over the HP/Superior Funds, less any bank fees, to Trustee Hays by delivering a check made payable to "S. Gregory Hays, Chapter 7 Trustee (HP/Superior, Inc.)" to S. Gregory Hays, Hays Financial Consulting, LLC, 3343 Peachtree Road, NE, Suite 200, Atlanta, GA 30326.

i.  Effective upon the Settlement Orders both becoming final, the automatic stay in the SHI Bankruptcy Case shall be modified for CSE Mortgage to exercise any and all of its rights and remedies under the SHI Assignment of Leases and Rents, more specifically, the Facility Lease, including without limitation, to collect and apply all of the rents receivable due and payable under the SHI Assignment of Leases and Rents, including receiving any and all payments from the HP/Superior Bankruptcy Estate on the SHI Admin Claim and the SHI Proof of Claim.  In addition, notwithstanding anything to the contrary in the SHI Admin Claim Order, upon entry of an appropriate order from the Bankruptcy Court authorizing such disbursement, Trustee Hays shall make all payments on account of the SHI Admin Claim and the SHI Proof of Claim, if any, directly to CSE Mortgage by delivering a check made payable to "CSE Mortgage, LLC" to Kevin A. Stine at the following address: Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 3414 Peachtree Rd, NE, Suite 1600, Monarch Plaza, Atlanta, GA 30326.  After application of any payments received on account of the SHI Admin Claim and the SHI Proof of Claim to the balance of the CSE SHI Claim, including any expenses and attorney's fees incurred by CSE Mortgage and approved by the Bankruptcy Court pursuant to Section 506(b) of the Bankruptcy Code, any remaining proceeds shall be promptly remitted to the Chapter 7 Trustee for distribution in accordance with priorities set by law.  Trustee Scarver shall request relief from the automatic stay from the Bankruptcy Court for CSE Mortgage to exercise its rights under the SHI Assignment of Leases and Rents in the SHI Settlement Approval Motion.

j.  Effective upon CSE Mortgage's receipt of the CSE-HP/Superior Claim
Payment from Trustee Hays, and except for: (a) the SHI Admin Claim; (b)
the SHI Proof of Claim; and (c) the rights, duties, and obligations created
or preserved under the Settlement Agreement and the HP/Superior
Settlement Approval Order, CSE Mortgage releases, acquits, and forever
discharges Trustee Hays and the HP/Superior Bankruptcy Estate from any
and all Claims (as defined in Section 8 of the Settlement Agreement) of
any kind, character, or nature whatsoever, known or unknown fixed or
contingent, that CSE Mortgage may have or claim to have against Trustee
Hays or the HP/Superior Bankruptcy Estate prior to the Effective Date of
the Settlement Agreement.  Effective upon CSE Mortgage's receipt of the
CSE-HP/Superior Claim Payment from Trustee Hays, the CSE
HP/Superior Claim shall be deemed satisfied and paid in full, except to the
extent of the HP-Superior Estate Carve-Out for the benefit of the
HP/Superior Bankruptcy Estate as set forth in Section 2.7 of the
Settlement Agreement.  For avoidance of doubt, this provision is not
intended to nor shall it be construed to release, acquit, discharge, or
otherwise limit or affect any claim, right, or remedy of CSE to collect or
recover the remaining balance of the debt represented by the HP/Superior
Claim from any non-debtor parties or property that is not property of
HP/Superior's Bankruptcy Estate, as applicable.

k.  Effective upon CSE Mortgage's receipt of the CSE-SHI Claim Payment
from Trustee Scarver, and except for: (a) the unpaid portion of the CSE
SHI Claim; and (b) the rights, duties, and obligations created or preserved
under the Settlement Agreement and the SHI Settlement Approval Order,
CSE Mortgage releases, acquits, and forever discharges Trustee Scarver
and the SHI Bankruptcy Estate from any and all Claims (as defined in
Section 8 of the Settlement Agreement) of any kind, character, or nature
whatsoever, known or unknown fixed or contingent, that CSE Mortgage
may have or claim to have against Trustee Scarver or the SHI Bankruptcy
Estate prior to the Effective Date of the Settlement Agreement.  For
avoidance of doubt, this provision is not intended to nor shall it be
construed to release, acquit, discharge, or otherwise limit or affect any
claim, right, or remedy of CSE to collect or recover the remaining balance
of the debt represented by the SHI Claim from any non-debtor parties or
property that is not property of SHI's Bankruptcy Estate, as applicable.

l.  Effective upon the Settlement Orders both becoming final, and except for
the rights, duties, and obligations created or preserved under the
Settlement Agreement and the HP/Superior Settlement Approval Order,
Trustee Hays releases, acquits, and forever discharges CSE Mortgage
from any and all Claims (as defined in Section 8 of the Settlement
Agreement) of any kind, character, or nature whatsoever, known or
unknown, fixed or contingent, that Trustee Hays or the HP/Superior
Bankruptcy Estate may have or claim to have against CSE Mortgage prior

to the Effective Date of the Settlement Agreement, including but not limited to any Claims arising from or related to 11 U.S.C. § 506(c).

m. Effective upon the Settlement Orders both becoming final, and except for the rights, duties, and obligations created or preserved under the Settlement Agreement and the SHI Settlement Approval Order, Trustee Scarver releases, acquits, and forever discharges CSE Mortgage from any and all Claims (as defined in Section 8 of the Settlement Agreement) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, that Trustee Scarver or the SHI Bankruptcy Estate may have or claim to have against CSE Mortgage prior to the Effective Date of the Settlement Agreement, including but not limited to any Claims arising from or related to 11 U.S.C. § 506(c).

n. The Parties shall file a stipulation dismissing the Adversary Proceeding *with prejudice* within ten (10) business days of the later of: (a) the Settlement Orders both becoming final; (b) Trustee Hays making the CSE-HP/Superior Claim Payment set forth in Section 2.9 of the Settlement Agreement; or (c) Trustee Scarver making the CSE-SHI Claim Payment set forth in Section 2.10 of the Settlement Agreement.

o. Within ten (10) business days of Trustee Hays making the CSE-HP/Superior Claim Payment, CSE shall withdraw the Replacement Lien Motion *with prejudice.*

### Relief Requested

37.     Trustee Hays requests an order from the Bankruptcy Court approving the Settlement Agreement, making the findings and determinations required under the Settlement Agreement, and authorizing and directing the disbursements required under the Settlement Agreement.

38.     Trustee Hays requests an order from the Bankruptcy Court authorizing and directing Scroggins to turn over to Trustee Hays $58,287.70 of the HP/Superior Sales Proceeds.

39.     Trustee Hays requests an order from the Bankruptcy Court finding and determining that CSE Mortgage has a first-priority security interest in and to the HP/Superior Sales Proceeds and the Medicaid Funds in an amount equal to $755,677.20 in accordance with

Section 2.5 of the Settlement Agreement, and approving the HP/Superior Estate Carve-Out and the SHI Estate Carve-Out.

40.     Trustee Hays requests an order from the Bankruptcy Court authorizing and directing Trustee Hays to make the CSE-HP/Superior Claim Payment to CSE Mortgage in accordance with Section 2.9 of the Settlement Agreement.

41.     Trustee Hays requests an order from the Bankruptcy Court authorizing and directing Trustee Scarver to turn over to Trustee Hays the HP/Superior Funds in the approximate amount of $1,062.73, less any bank fees.

### Basis for Relief

42.     Federal Rule of Bankruptcy Procedure 9019(a) provides, in pertinent part, that "[o]n motion by Trustee and after notice of a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The standard in this Circuit for determining whether to approve a compromise or settlement pursuant to Rule 9019(a) is set forth in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990), in which the Eleventh Circuit stated as follows:

> When a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:
>
> > (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1549. In making its evaluation, a court must not rest its approval of the settlement on a resolution of the ultimate factual and legal issues underlying the compromised disputes. *In re Teltronics Servs., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985). Rather, the court should consider the

probable outcome of the litigation, including its advantages and disadvantages, and make a pragmatic decision based on all equitable factors. *Florida Trailer and Equip. Co. v. Deal,* 284 F.2d 567, 571 (5th Cir. 1960).[3]

43.     The proposed settlement between Trustee Hays, CSE Mortgage, and Trustee Scarver is the product of arms-length negotiations and reflects the Parties' analysis and consideration of the relevant legal, factual, and economic issues.

44.     Given the potential time and expense of litigating the CSE Disputes, including the Allocation Issue, the Surcharge Issue, the Replacement Lien Issue, and the Cross-Default Issue, and the contingent nature of the same, in the event that the claims that are proposed to be settled are instead prosecuted, the amount of time that such litigation will require, the delay before the final outcome is known (including potential appeals), and the complexity and uncertain resolution of factual and legal disputes, settlement on the terms described in the Settlement Agreement is a proper exercise of Trustee Hays's business judgment and in the best interests of the HP/Superior Bankruptcy Estate.  In fact, Trustee Hays estimates that litigating the CSE Disputes could take years and could cost the HP/Superior Bankruptcy Estate hundreds of thousands of dollars in additional administrative expense without any certainty of a favorable outcome.  The proposed Settlement Agreement allows the HP/Superior Bankruptcy Estate to avoid these costs and creates approximately $187,000.00 in free and clear funds that Trustee Hays will distribute to unsecured creditors, whether priority or non-priority, in accordance with the priority scheme established by the Bankruptcy Code.   In addition, the HP/Superior Bankruptcy Estate will still hold an additional $2.1 million, a portion of which may be available for distribution to unsecured creditors (depending on additional litigation or settlement related to

---

[3]       In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

the extent, validity, and priority of other asserted secured claims), whether priority or non-priority. In summary, the proposed Settlement represents an advantageous result for the HP/Superior Bankruptcy Estate and clearly falls within the range of reasonableness required under *Justice Oaks*.

45.    Under the standard set forth above and for the reasons previously detailed in this Settlement Motion, Trustee requests that the Bankruptcy Court approve the Settlement Agreement.

WHEREFORE, Trustee respectfully requests that the Bankruptcy Court enter an Order:

i.    granting this Settlement Motion;

ii.     authorizing Trustee to take actions reasonably necessary to effectuate the terms of the Settlement Agreement;

iii.    authorizing and directing Scroggins to turn over to Trustee Hays the $58,287.70 of the HP/Superior Sales Proceeds;

iv.    finding and determining that CSE Mortgage has a first-priority security interest in and to the HP/Superior Sales Proceeds and the Medicaid Funds in an amount equal to $755,677.20, and approving the HP/Superior Estate Carve-Out and the SHI Estate Carve-Out, in accordance with Sections 2.5 and 2.7 of the Settlement Agreement;

v.    authorizing and directing Trustee Hays to make the CSE-HP/Superior Claim Payment to CSE Mortgage in accordance with Section 2.9 of the Settlement Agreement;

vi.     authorizing and directing Trustee Scarver to turn over to Trustee Hays the HP/Superior Funds in the approximate amount of $1,062.73, less any bank fees; and

vii.    granting to the Parties such other and further relief as the Court deems just and appropriate.

Respectfully submitted, this 17th day of June, 2016.

ARNALL GOLDEN GREGORY LLP
*Attorneys for Trustee*

By:*/s/ Michael J. Bargar*
        Sean C. Kulka
        Georgia Bar No. 648919
        sean.kulka@agg.com
171 17th Street, NW, Suite 2100                Michael J. Bargar
Atlanta, GA 30363                              Georgia Bar No. 645709
(404) 873-8500                                 michael.bargar@agg.com

**EXHIBIT "A" FOLLOWS**

8974543v1

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "**Agreement**"), dated as of June ⎨6, 2016 (the "**Effective Date**"), is entered between S. Gregory Hays, as Chapter 7 Trustee Hays ("**Trustee Hays**") for the bankruptcy estate (the "**HP/Superior Bankruptcy Estate**") of HP/Superior, Inc. ("**HP/Superior**"), Cathy L. Scarver, as Chapter 7 Trustee ("**Trustee Scarver**") for the bankruptcy estate (the "**SHI Bankruptcy Estate**") of Superior Healthcare Investors, Inc. ("**SHI**"), and CSE Mortgage LLC, a Delaware limited liability company ("**CSE Mortgage**" and together with Trustee Hays and Trustee Scarver, each a "**Party**" and collectively, the "**Parties**").

### Background

1.  On November 3, 2014 (the "**HP/Superior Petition Date**"), HP/Superior filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, modified, or supplemented, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division ("**Bankruptcy Court**"), initiating Chapter 11 Case No. 14-71797-PWB (the "**HP/Superior Bankruptcy Case**").

2.  Scroggins & Williamson, P.C. ("**Scroggins**") represents HP/Superior in the HP/Superior Bankruptcy Case.

3.  On January 6, 2015 (the "**SHI Petition Date**"), SHI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, initiating Case No. 15-50439-PWB in the Bankruptcy Court (the "**SHI Bankruptcy Case**").

4.  Lamberth, Cifelli, Ellis & Nason, P.A. represents SHI in the SHI Bankruptcy Case.

5.  On February 3, 2015, the Bankruptcy Court entered an order [Doc. No. 59; Case No. 14-71797-PWB] authorizing the joint administration of the HP/Superior Bankruptcy Case and the SHI Bankruptcy Case for procedural purposes only pursuant to 11 U.S.C. § 1015(b).

6.  On October 27, 2015, the Bankruptcy Court entered an order [Doc. No. 141; Case No. 14-71797-PWB] directing the appointment of Chapter 11 trustees on behalf of HP/Superior and SHI.

7.  On October 30, 2015, the Bankruptcy Court entered an order [Doc. No. 146; Case No. 14-71797-PWB] approving Trustee Hays as Chapter 11 Trustee for HP/Superior, and on the same day the Bankruptcy Court entered an order [Doc. No. 23; Case No 15-50439-PWB] appointing Trustee Scarver as Chapter 11 Trustee for SHI.

8.  On November 17, 2015, the Court entered an order [Doc. No. 168; Case No. 14-71797-PWB] converting the HP/Superior Bankruptcy Case and SHI Bankruptcy Case from cases under Chapter 11 to cases under Chapter 7 of the Bankruptcy Code effective as of November 4, 2015 and severing their joint administration.

8972957v1

9.     On November 23, 2015, the United States Trustee appointed Trustee Hays as the Chapter 7 Trustee in the HP/Superior Bankruptcy Case. [Doc. No. 170; Case No. 14-71797-PWB]. Trustee Hays held and concluded the Section 341 meeting of creditors on January 12, 2016, and Trustee Hays is now the permanent Chapter 7 Trustee in the HP/Superior Bankruptcy Case.

10.    On November 23, 2015, the United States Trustee appointed Trustee Scarver as the Chapter 7 Trustee in the SHI Bankruptcy Case. [Doc. No. 38; Case No. 15-50439-PWB]. Trustee Scarver held and concluded the Section 341 meeting of creditors on January 5, 2016, and Trustee Scarver is now the permanent Chapter 7 Trustee in the SHI Bankruptcy Case.

11.    Prior to the HP/Superior Petition Date, and for the majority of the time that the HP/Superior Bankruptcy Case was pending as a Chapter 11 case, HP/Superior operated a long-term nursing home facility located in the City of Superior, Douglas County Wisconsin on real property owned by SHI.

12.    On or about July 1, 2015, HP/Superior and SHI consummated a sale (the "**Sale**") of substantially all their assets pursuant to an order [Doc. 84; Case No. 14-71797-PWB] of the Bankruptcy Court.

13.    Prior to the closing of the sale, Superior WI Realty, LLC (the "**Purchaser**") paid an additional $50,000.00 to HP/Superior to extend the closing date of the sale from June 1, 2015 to July 1, 2015. *See* [Doc. No. 94; Case No. 14-71797-PWB].

14.    By order entered July 1, 2015 [Doc. No. 94; Case No. 14-71797-PWB], the Bankruptcy Court approved the extension of the closing date through July 1, 2015.

15.    HP/Superior and SHI closed on the Sale with the Purchaser on or about July 1, 2015.

16.    After payment of various closing costs, including taxes, Scroggins held $1,565,660.42 in escrow (the "**Sale Proceeds**"), of which $50,000.00 related to the payment by the Purchaser to extend the closing date (the "**$50,000.00 Extension Funds**"). *See* [Doc. No. 97; Case No. 14-71797-PWB].

17.    Following an order by the Bankruptcy Court [Doc. No. 100; Case No. 14-71797-PWB], Scroggins transferred $800,000.00 to CSE Mortgage in partial satisfaction of the CSE SHI Claim (defined below) on or about August 31, 2015.

18.    From the $50,000.00 Extension Funds, Scroggins paid $33,336.89 to Royalton Manor, LLC for cure costs related to an assumed contract, and it paid $16,348.00 to itself in partial satisfaction of its allowed professional fees and expenses.

19.    Scroggins currently holds $765,975.53 in its trust account from the Sale Proceeds (the "**Remaining Sales Proceeds**"), of which $315.11 is the remaining portion of the

8972957v1

$50,000.00 Extension Funds.

20. On February 25, 2016, the State of Wisconsin turned over to Trustee Hays $2,851,208.68 from Medicaid reimbursements that the State of Wisconsin had been withholding from HP/Superior because of unpaid bed tax assessments (the "**Medicaid Funds**"). Trustee Hays is holding the Medicaid Funds in his bank account for the HP/Superior Bankruptcy Estate.

21. On December 10, 2014, CSE Mortgage filed a proof of claim [Claim No. 5-1; Case No. 14-71797-PWB] in the HP/Superior Bankruptcy Case for a secured claim in the amount of $133,065.92 (the "**CSE HP/Superior Claim**") and asserted HP/Superior's assets were pledged pre-petition as additional collateral for the CSE SHI Claim (described below). The basis for CSE Mortgage's secured claim is a Revolving Credit and Security Agreement (the "**Credit Agreement**") entered into by HP/Superior and CapitalSource Finance, LLC, as predecessor in interest to CSE Mortgage.

22. CSE Mortgage alleges that the amount of the CSE HP/Superior Claim has increased to $379,889.50 as of April 22, 2016 (the "**CSE HP/Superior Debt**") as a result of the continuing accrual of post-petition interest, loan fees, expenses, and attorney's fees as provided under the terms of the Credit Agreement and Section 506 of the Bankruptcy Code.

23. On March 10, 2015, CSE Mortgage filed a proof of claim [Claim No. 2-1] in the SHI Bankruptcy Case, which was amended on June 16, 2016 and asserted a claim with a secured status in the amount of $5,141,671.00 (the "**CSE SHI Claim**").

24. Prior to the Petition Date, CapitalSource Finance, LLC, as predecessor in interest to CSE Mortgage, filed a UCC-1 (the "**CSE UCC-1**") to perfect its security interest in personal property of HP/Superior.

25. Prior to the Petition Date, CSE Mortgage held a first-priority security interest in all real and personal property of SHI, including an assignment of leases and rents due under that certain lease agreement between SHI and HP/Superior dated as of May 1, 2004 (the "**Facility Lease**"), for which the assignment was filed on the public records of Douglas County Wisconsin on May 14, 2004 (the "**SHI Assignment of Leases and Rents**").

26. On or about March 30, 2007, HP/Superior, SHI, and CSE Mortgage, among other parties, signed a cross-default agreement (the "**Cross-Default Agreement**").

27. CSE Mortgage contends that, in addition to the security interest granted through the Credit Agreement and perfected through the filing of the CSE UCC-1, the Cross-Default Agreement secures for CSE Mortgage the repayment of the debt represented by the CSE SHI Claim in property of the HP/Superior Bankruptcy Estate.

28. Trustee Hays vigorously contests that the Cross-Default Agreement grants CSE Mortgage an additional security interest in property of the HP/Superior Bankruptcy Estate and

8972957v1

contends that such document does not render HP/Superior liable for the repayment of the debt represented by the CSE SHI Claim. The dispute over the extent, validity, and priority of the security interest purportedly granted by the Cross-Default Agreement, if any, is referred to as the "**Cross-Default Issue**."

29.  Trustee Hays and Trustee Scarver have agreed between themselves and contend that the HP/Superior Bankruptcy Estate is entitled to $159,383.60 of the Remaining Sales Proceeds and that the SHI Bankruptcy Estate is entitled to the remaining $606,591.93. CSE Mortgage contends that the HP/Superior Bankruptcy Estate is not entitled to any portion of the Remaining Sales Proceeds. *See, e.g.,* [Doc. No. 97]. The Parties' dispute over the allocation of the Remaining Sales Proceeds is referred to as the "**Allocation Issue**."

30.  Trustee Scarver is holding approximately $1,062.73 from a National Bank of Commerce account (Account No. xxxx-2463), which funds were generated from the business operations of HP/Superior (the "**H/P Superior Funds**"). Trustee Scarver and Trustee Hays agree that the H/P Superior Funds, less any bank fees, are property of the H/P Superior Bankruptcy Estate. Trustee Scarver would like to turn over the H/P Superior Funds to Trustee Hays.

31.  On October 15, 2015, HP/Superior and SHI filed a complaint against CSE Mortgage seeking a surcharge under 11 U.S.C. § 506(c) (the "**Surcharge Issue**"), initiating the adversary proceeding styled as *HP/Superior, Inc., et al. v. CSE Mortgage, LLC* (Adv. Proceeding No. 15-5401-PWB) (the "**Adversary Proceeding**").

32.  On February 1, 2015, CSE Mortgage filed a motion [Doc. No. 185; Case No. 14-71797-PWB] (the "**Replacement Lien Motion**"), seeking a replacement lien or, alternatively, an equitable lien in post-petition accounts receivable of HP/Superior (the "**Replacement Lien Issue**" and collectively with the Cross-Default Issue, the Allocation Issue, and the Surcharge Issue, the "**CSE Disputes**").

33.  On February 25, 2016, the Bankruptcy Court entered an order [Doc. No. 190; Case No. 14-71797-PWB] (the "**SHI Admin Claim Order**") in the HP/Superior Bankruptcy Case granting the SHI Bankruptcy Estate an allowed Chapter 11 administrative expense claim in the amount of $463,979.83 against the HP/Superior Bankruptcy Estate (the "**SHI Admin Claim**"), which, in accordance with the terms of the SHI Admin Claim Order, is subordinate to all Chapter 7 administrative expenses of the HP/Superior Bankruptcy Estate, and which is to be paid pro rata with all other Chapter 11 administrative expenses against the HP/Superior Bankruptcy Estate.

34.  On April 25, 2016, Trustee Scarver filed a proof of claim in the HP/Superior Bankruptcy Case for the sum of $2,662,000.00 (the "**SHI Proof of Claim**"), as more particularly described in Claim 37 on the claims register in the HP/Superior Bankruptcy Case.

35.  Subject to Bankruptcy Court approval, the Parties have reached an agreement resolving the CSE Disputes on the terms set forth herein.

8972957v1

Accordingly, the Parties agree as follows:

1.   **Background.**  The recitations in the above background section are incorporated into and made a part of this Agreement as if set forth fully herein.

2.   **Resolution of the CSE Disputes.**   Subject to approval of this Agreement by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, following notice and the opportunity for a hearing, the Parties agree to resolve the CSE Disputes as follows:

   2.1.   *Approval of Proposed Settlement in the HP/Superior Bankruptcy Case.*  Within five (5) business days after the full execution of this Agreement by each of the Parties, Trustee Hays shall prepare and file the necessary pleadings, including, but not limited to, a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("**HP/Superior Settlement Approval Motion**"), seeking entry of an order by the Bankruptcy Court approving the compromise and settlement set forth in this Agreement ("**HP/Superior Settlement Approval Order**").

   2.2.   *Approval of Proposed Settlement in the SHI Bankruptcy Case.*  Within five (5) business days after the full execution of this Agreement by each of the Parties, Trustee Scarver shall prepare and file the necessary pleadings, including, but not limited to, a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("**SHI Settlement Approval Motion**"; together with the HP/Superior Settlement Approval Motion, the "**Settlement Motions**"), seeking entry of an order by the Bankruptcy Court approving the compromise and settlement set forth in this Agreement ("**SHI Settlement Approval Order**"; together with the HP/Superior Settlement Approval Order, the "**Settlement Orders**").

   2.3.   *Allocation of the Remaining Sales Proceed*s.  Effective upon the Settlement Orders becoming final, the Remaining Sales Proceeds shall be allocated as follows: (1) $707,687.83 shall be allocated to the SHI Bankruptcy Estate (the "**SHI Sales Proceeds**"); and (2) $58,287.70 shall be allocated to the HP/Superior Bankruptcy Estate (the "**HP/Superior Sales Proceeds**").

   For the purposes of this Agreement, each of the Settlement Orders shall become final when it has been entered on the docket in the HP/Superior Bankruptcy Case or the SHI Bankruptcy Case, as applicable, and it (a) has not been reversed, stayed, modified or amended and as to which the time to appeal from, or to seek review or rehearing of, has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) if appealed from, has been affirmed (or the appeal dismissed) and the time to appeal from such affirmance or to seek review or rehearing thereof has expired, or no further hearing, appeal or petition for certiorari can be taken or granted.

2.4.   *Turnover of the Remaining Sales Proceeds by Scroggins.* As part of the Settlement Motions, Trustee Hays shall move the Bankruptcy Court to enter an order compelling Scroggins to turn over to Trustee Hays the HP/Superior Sales Proceeds in the amount of $58,287.70, and Trustee Scarver shall move the Bankruptcy Court to enter an order compelling Scroggins to turn over to Trustee Scarver the SHI Sales Proceeds in the amount of $707,687.83.

2.5.   *First Priority Security Interest of CSE Mortgage in the HP-Superior Sales Proceeds and Medicaid Funds.* Effective upon the Settlement Orders both becoming final, the Parties agree that CSE shall have a first-priority security interest in and to the HP/Superior Sales Proceeds and the Medicaid Funds in an amount equal to $755,677.20. As part of the HP/Superior Settlement Approval Motion, Trustee Hays will request that the Bankruptcy Court determine, as part of the HP/Superior Settlement Approval Order, that CSE has a first-priority security interest in and to the HP/Superior Sales Proceeds and the Medicaid Funds in an amount equal to $755,677.20 (the "**CSE-HP/Superior First Priority Security Interest**").

2.6.   *First Priority Security Interest of CSE Mortgage in the SHI Sales Proceeds.* Effective upon the Settlement Orders both becoming final, the Parties agree that CSE shall have a first priority security interest in and to the SHI Sales Proceeds in an amount equal to $707,687.83. As part of the SHI Settlement Approval Motion, Trustee Scarver will request that the Bankruptcy Court determine, as part of the SHI Settlement Approval Order, that CSE has a first priority security interest in and to the SHI Sales Proceeds in an amount equal to $707,687.83 (the "**CSE-SHI First Priority Security Interest**").

2.7.   *Carve-Out from the CSE-HP/Superior First Priority Security Interest for the Benefit of the HP/Superior Bankruptcy Estate in the amount of $187,089.03.* Effective upon the Settlement Orders both becoming final, the HP/Superior Bankruptcy Estate shall have a carve-out from the CSE-HP/Superior First Priority Security Interest in the amount of $187,089.03 (the "**HP/Superior Estate Carve-Out**"). For avoidance of doubt, it is the intent of the Parties that upon the Settlement Orders both becoming final, the HP/Superior Bankruptcy Estate shall have a first priority security interest and lien in the HP/Superior Sales Proceeds and the Medicaid Funds in the amount of $187,089.03, which shall be distributed by Trustee Hays in accordance with 11 U.S.C. § 726.

2.8.   *Carve-Out from the CSE/SHI First Priority Security Interest for the Benefit of the SHI Bankruptcy Estate in the amount of $55,000.00.* Effective upon the Settlement Orders both becoming final, the SHI Bankruptcy Estate shall have a carve-out from the CSE/SHI First Priority Security Interest in the amount of $55,000.00 (the "**SHI Estate Carve-Out**"). For avoidance of doubt, it is the intent of the Parties that upon the Settlement Orders both becoming final, the SHI Bankruptcy Estate shall have a first priority security interest and lien in the SHI Sales Proceeds in the amount of $55,000.00, which shall be

8972957v1

exclusively used first for payment of allowed Chapter 7 administrative expense claims and then for allowed Chapter 11 attorney's fees for Trustee Scarver's attorneys and SHI's attorneys.

2.9.  *Payment by Trustee Hays to CSE Mortgage.*  Within five (5) business days of the later of: (a) Trustee Hays's receipt of the HP/Superior Sales Proceeds in the amount of $58,287.70 from Scroggins; or (b) the Settlement Orders both becoming final, Trustee Hays shall pay $559,889.50 (the "**CSE-HP/Superior Claim Payment**") to CSE Mortgage by delivering a check made payable to "CSE Mortgage, LLC" in the amount of $559,889.50 to Kevin A. Stine at the following address: Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 3414 Peachtree Rd, NE, Suite 1600, Monarch Plaza, Atlanta, GA 30326.  Trustee Hays shall request authority from the Bankruptcy Court to make the CSE-HP/Superior Claim Payment in the HP/Superior Settlement Approval Motion

2.10.  *Payment by Trustee Scarver to CSE Mortgage*.  Within five (5) business days of the later of: (a) Trustee Scarver's receipt of the SHI Sales Proceeds in the amount of $707,687.83 from Scroggins; or (b) the Settlement Orders both becoming final, Trustee Scarver shall pay $652,687.83 (the "**CSE-SHI Claim Payment**") to CSE Mortgage by delivering a check made payable to "CSE Mortgage, LLC" in the amount of $652,687.83 to Kevin A. Stine at the following address: Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 3414 Peachtree Rd, NE, Suite 1600, Monarch Plaza, Atlanta, GA 30326.  The CSE-SHI Claim Payment shall reduce the CSE-SHI Claim on a dollar for dollar basis.  Trustee Scarver shall request authority from the Bankruptcy Court to make the CSE-SHI Claim Payment in the SHI Settlement Approval Motion.

2.11.  *Turn Over of HP/Superior Funds by Trustee Scarver to Trustee Hays*.  Within five (5) business days of the Settlement Orders both becoming final, Trustee Scarver shall turn over the HP/Superior Funds, less any bank fees, to Trustee Hays by delivering a check made payable to "S. Gregory Hays, Chapter 7 Trustee (HP/Superior, Inc.)" to S. Gregory Hays, Hays Financial Consulting, LLC, 3343 Peachtree Road, NE, Suite 200, Atlanta, GA 30326.

2.12.  *Relief from the Automatic Stay for CSE Mortgage to Exercise its Rights under the SHI Assignment of Leases and Rents.*  Effective upon the Settlement Orders both becoming final, the automatic stay in the SHI Bankruptcy Case shall be modified for CSE Mortgage to exercise any and all of its rights and remedies under the SHI Assignment of Leases and Rents, more specifically, the Facility Lease, including without limitation, to collect and apply all of the rents receivable due and payable under the SHI Assignment of Leases and Rents, including receiving any and all payments from the HP/Superior Bankruptcy Estate on the SHI Admin Claim and the SHI Proof of Claim.  In addition, notwithstanding anything to the contrary in the SHI Admin Claim Order, upon entry of an appropriate order from the Bankruptcy Court authorizing such disbursement, Trustee Hays shall make all payments on account of the SHI Admin Claim and the SHI Proof of Claim, if any,

directly to CSE Mortgage by delivering a check made payable to "CSE Mortgage, LLC" to Kevin A. Stine at the following address: Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 3414 Peachtree Rd, NE, Suite 1600, Monarch Plaza, Atlanta, GA 30326. After application of any payments received on account of the SHI Admin Claim and the SHI Proof of Claim to the balance of the CSE SHI Claim, including any expenses and attorney's fees incurred by CSE Mortgage and approved by the Bankruptcy Court pursuant to Section 506(b) of the Bankruptcy Code, any remaining proceeds shall be promptly remitted to the Chapter 7 Trustee for distribution in accordance with priorities set by law. Trustee Scarver shall request relief from the automatic stay from the Bankruptcy Court for CSE Mortgage to exercise its rights under the SHI Assignment of Leases and Rents in the SHI Settlement Approval Motion.

2.13. *Satisfaction of the CSE-HP/Superior Claim and release of all claims arising from or related to the Cross-Default Agreement* and *Release by CSE Mortgage in Favor of Trustee Hays and HP/Superior Bankruptcy Estate.* Effective upon CSE Mortgage's receipt of the CSE-HP/Superior Claim Payment from Trustee Hays, and except for: (a) the SHI Admin Claim; (b) the SHI Proof of Claim; and (c) the rights, duties, and obligations created or preserved under this Agreement and the HP/Superior Settlement Approval Order, CSE Mortgage releases, acquits, and forever discharges Trustee Hays and the HP/Superior Bankruptcy Estate from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown fixed or contingent, that CSE Mortgage may have or claim to have against Trustee Hays or the HP/Superior Bankruptcy Estate prior to the Effective Date. Effective upon CSE Mortgage's receipt of the CSE-HP/Superior Claim Payment from Trustee Hays, the CSE- HP/Superior Claim shall be deemed satisfied and paid in full, except to the extent of the HP-Superior Estate Carve-Out for the benefit of the HP/Superior Bankruptcy Estate as set forth in Section 2.7 of this Agreement. For avoidance of doubt, this provision is not intended to nor shall it be construed to release, acquit, discharge, or otherwise limit or affect any claim, right, or remedy of CSE to collect or recover the remaining balance of the debt represented by the HP/Superior Claim from any non-debtor parties or property that is not property of HP/Superior's Bankruptcy Estate, as applicable.

2.14. *Release by CSE Mortgage in Favor of Trustee Scarver and SHI Bankruptcy Estate.* Effective upon CSE Mortgage's receipt of the CSE-SHI Claim Payment from Trustee Scarver, and except for: (a) the unpaid portion of the CSE SHI Claim; and (b) the rights, duties, and obligations created or preserved under this Agreement and the SHI Settlement Approval Order, CSE Mortgage releases, acquits, and forever discharges Trustee Scarver and the SHI Bankruptcy Estate from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown fixed or contingent, that CSE Mortgage may have or claim to have against Trustee Scarver or the SHI Bankruptcy Estate prior to the Effective Date. For avoidance of doubt, this provision is not intended to nor shall it be construed to

8972957v1

release, acquit, discharge, or otherwise limit or affect any claim, right, or remedy of CSE to collect or recover the remaining balance of the debt represented by the SHI Claim from any non-debtor parties or property that is not property of SHI's Bankruptcy Estate, as applicable.

2.15. *Release by Trustee Hays in Favor of CSE Mortgage*. Effective upon the Settlement Orders both becoming final, and except for the rights, duties, and obligations created or preserved under this Agreement and the HP/Superior Settlement Approval Order, Trustee Hays releases, acquits, and forever discharges CSE Mortgage from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, that Trustee Hays or the HP/Superior Bankruptcy Estate may have or claim to have against CSE Mortgage prior to the Effective Date, including but not limited to any Claims arising from or related to 11 U.S.C. § 506(c).

2.16. *Release by Trustee Scarver in Favor of CSE Mortgage*. Effective upon the Settlement Orders both becoming final, and except for the rights, duties, and obligations created or preserved under this Agreement and the SHI Settlement Approval Order, Trustee Scarver releases, acquits, and forever discharges CSE Mortgage from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, that Trustee Scarver or the SHI Bankruptcy Estate may have or claim to have against CSE Mortgage prior to the Effective Date, including but not limited to any Claims arising from or related to 11 U.S.C. § 506(c).

2.17. *Stipulation of Dismissal*. The Parties shall file a stipulation dismissing the Adversary Proceeding *with prejudice* within ten (10) business days of the later of: (a) the Settlement Orders both becoming final; (b) Trustee Hays making the CSE-HP/Superior Claim Payment set forth in Section 2.9 of this Agreement; or (c) Trustee Scarver making the CSE-SHI Claim Payment set forth in Section 2.10 of this Agreement.

2.18. *Withdrawal of the Replacement Lien Motion*. Within ten (10) business days of Trustee Hays making the CSE-HP/Superior Claim Payment, CSE shall withdraw the Replacement Lien Motion *with prejudice*.

3. **No Admissions.** The Parties acknowledge and agree that this Agreement is being executed and delivered as part of the compromise and settlement of disputed claims and is expressly contingent upon and subject to Bankruptcy Court approval. The Parties further acknowledge and agree that this Agreement will not and may not be used or construed as an admission of any liability or responsibility to any Party or to any other persons or entities.

8972957v1

4.  **Entire Agreement; Modification.**  The Parties agree that there are no other agreements, oral or written, between or among them relating to any matters covered by this Agreement, and that this Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein.  The Parties further agree that this Agreement may not be altered, amended, or modified in any respect or particular whatsoever, except by a writing duly executed by the Parties, and that any material amendment is subject to Bankruptcy Court approval.

5.  **Voluntary Execution of Agreement.**  The Parties hereby mutually acknowledge, represent, and warrant that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, or had an opportunity to consult with legal counsel of their choosing, and that they have read, know, and understand completely the contents hereof, and that they have voluntarily executed the same.  The Parties further mutually acknowledge, represent, and warrant that they have had input into the drafting of this Agreement, or had an opportunity to provide input in its drafting, and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any one of the Parties but rather shall be given fair and reasonable interpretation based on the plain language of this Agreement and the expressed intent of the Parties.

6.  **Authority of Parties.**  The persons executing this Agreement represent and warrant to one and other that they have the legal and institutional authority to do so on behalf of the person or legal entity for which they are signing.

7.  **Counterparts.**  This Agreement may be executed in one or more counterparts, each of which is an original, and all of which constitute only one agreement between the Parties. Counterparts of this Agreement also may be exchanged via electronic transmission such as facsimile machines or computer, and any Party's signature transmitted by such electronic transmission shall be deemed to be an original signature for all purposes.

8.  **Definition of Claims.**  The term "Claims" means all claims or causes of action that were asserted or could have been brought as of the Effective Date by or on behalf of any Party to this Agreement, either directly or indirectly, in respect of, in relation to, or in connection with the Adversary Proceeding, the HP/Superior Bankruptcy Case, or the SHI Bankruptcy Case.  Notwithstanding the foregoing sentence, however, any claim, right, or remedy of CSE to collect or recover the remaining balance of the debts represented by the HP/Superior Claim and the SHI Claim from any non-debtor parties or property that is not property of HP/Superior's Bankruptcy Estate or SHI's Bankruptcy Estate is not included with and is specifically excepted from the term "Claims."

9.  **Bankruptcy Court Jurisdiction.**  The Bankruptcy Court shall retain jurisdiction over the Parties for enforcement of this Agreement and any and all disputes, controversies, or claims regarding the interpretation, validity, construction or other issue relating to or concerning this Agreement.  An action relating to, based upon, or arising from a breach of this Agreement shall be brought only in the Bankruptcy Court, which shall retain exclusive jurisdiction over the subject matter and the Parties for this purpose.

8972957v1

10. **Georgia Law Applicable.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Georgia, without regard to its conflict of law principles.

11. **Severability.** If any provision of this Agreement is illegal or unenforceable, that provision is severed from this Agreement and the other provisions remain in force.

12. **Notices.** Any notices by Parties provided for or permitted under this Agreement, or by law, shall be in writing and shall be deemed received: (a) when personally delivered to a Party, on the date of such delivery; or (b) when sent via electronic mail to a Party at the electronic mail address set forth below, on the date of transmission, provided that the transmitting Party has no reasonable belief that the electronic mail was not delivered; or (c) when deposited in the United States Mail, certified and postage prepaid, addressed to such party at the address set forth below, three (3) days following the deposit of such notice in the mail.  Notices shall be sent to the parties as follows:

12.1.   *If to Trustee Hays*:

> Michael J. Bargar
> Arnall Golden Gregory LLP
> 171 17th Street, NW, Suite 2100
> Atlanta, GA 30363
> michael.bargar@agg.com (electronic mail)

12.2.   *If to Trustee Scarver*:

> Cathy L. Scarver
> C.L. Scarver & Associates, LLC
> P.O. Box 672587
> Marietta, GA 30006
> trusteescarver@bellsouth.net (electronic mail)

12.3.   *If to CSE Mortgage*:

> Kevin A. Stine
> Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
> 3414 Peachtree Rd., N.E.
> Suite 1600, Monarch Plaza
> Atlanta, GA 30326
> kstine@bakerdonelson.com (electronic mail)

The address to which notices are to be sent may be changed by any party by providing notice of the new address to the other Parties as provided herein.

8972957v1

13.    **Restoration**.  In the event that the Bankruptcy Court denies approval of this Agreement for any reason, including the legal determinations by the Bankruptcy Court that are required under this Agreement, whether in the HP/Superior Bankruptcy Case or the SHI Bankruptcy Case, then, and in that event, unless otherwise agreed by the Parties in writing, this Agreement shall terminate and be null and void and have no further force or effect and the Parties shall be restored to their respective factual and legal positions which existed immediately prior to execution of this Agreement.

14.    **Parties to Bear Own Costs**.  Each Party shall bear its own costs (including attorney's fees) incurred in connection with the negotiation, preparation, execution, and carrying out of this Agreement, and any other agreements, instruments, or documents executed in accordance with the terms of this Agreement.

15.    **Time is of the Essence.**  Time is of the essence in this Agreement.

To evidence the Parties' agreement to this Agreement, they have executed and delivered it on the dates set forth below the signature lines, but as of the Effective Date.

**TRUSTEE HAYS**

_____

S. Gregory Hays, as and only as
Chapter 7 Trustee for the bankruptcy estate of
HP/Superior, Inc. (Case No. 14-71797-PWB)

Dated:_____

**TRUSTEE SCARVER**

Cathy L. Scarver, as and only as
Chapter 7 Trustee for the bankruptcy estate of
Superior Healthcare Investors, Inc. (Case No. 15-50439-PWB)

Dated: 6/16/16

**CSE MORTGAGE, LLC**

By:_____
   Name:
   Title:

Dated:_____

8972957v1

13.   **Restoration**.  In the event that the Bankruptcy Court denies approval of this Agreement for any reason, including the legal determinations by the Bankruptcy Court that are required under this Agreement, whether in the HP/Superior Bankruptcy Case or the SHI Bankruptcy Case, then, and in that event, unless otherwise agreed by the Parties in writing, this Agreement shall terminate and be null and void and have no further force or effect and the Parties shall be restored to their respective factual and legal positions which existed immediately prior to execution of this Agreement.

14.   **Parties to Bear Own Costs**.  Each Party shall bear its own costs (including attorney's fees) incurred in connection with the negotiation, preparation, execution, and carrying out of this Agreement, and any other agreements, instruments, or documents executed in accordance with the terms of this Agreement.

15.   **Time is of the Essence.**  Time is of the essence in this Agreement.

To evidence the Parties' agreement to this Agreement, they have executed and delivered it on the dates set forth below the signature lines, but as of the Effective Date.

**TRUSTEE HAYS**

_____
S. Gregory Hays, as and only as
Chapter 7 Trustee for the bankruptcy estate of
HP/Superior, Inc. (Case No. 14-71797-PWB)

Dated:_____

**TRUSTEE SCARVER**

_____
Cathy L. Scarver, as and only as
Chapter 7 Trustee for the bankruptcy estate of
Superior Healthcare Investors, Inc. (Case No. 15-50439-PWB)

Dated:_____

**CSE MORTGAGE, LLC**

By:_____
    Name:         Jason Schwartz
    Title:         SVP, Managing Director

Dated:_____

8972957v1

13. **Restoration**. In the event that the Bankruptcy Court denies approval of this Agreement for any reason, including the legal determinations by the Bankruptcy Court that are required under this Agreement, whether in the HP/Superior Bankruptcy Case or the SHI Bankruptcy Case, then, and in that event, unless otherwise agreed by the Parties in writing, this Agreement shall terminate and be null and void and have no further force or effect and the Parties shall be restored to their respective factual and legal positions which existed immediately prior to execution of this Agreement.

14. **Parties to Bear Own Costs**. Each Party shall bear its own costs (including attorney's fees) incurred in connection with the negotiation, preparation, execution, and carrying out of this Agreement, and any other agreements, instruments, or documents executed in accordance with the terms of this Agreement.

15. **Time is of the Essence.** Time is of the essence in this Agreement.

To evidence the Parties' agreement to this Agreement, they have executed and delivered it on the dates set forth below the signature lines, but as of the Effective Date.

**TRUSTEE HAYS**

_____
S. Gregory Hays, as and only as
Chapter 7 Trustee for the bankruptcy estate of
HP/Superior, Inc. (Case No. 14-71797-PWB)

Dated: 6-16-16

**TRUSTEE SCARVER**

_____
Cathy L. Scarver, as and only as
Chapter 7 Trustee for the bankruptcy estate of
Superior Healthcare Investors, Inc. (Case No. 15-50439-PWB)

Dated:_____

**CSE MORTGAGE, LLC**

By:_____
   Name:
   Title:

Dated:_____

Page 12 of 12

8972957v1

## CERTIFICATE OF SERVICE

This is to certify that I, Michael J. Bargar, am over the age of 18 and that I have this day served a true and correct copy of the foregoing *Motion for Order: (A) Authorizing Settlement Between Trustee, CSE Mortgage, LLC, and the Chapter 7 Trustee for the Bankruptcy Estate of Superior Healthcare Investors, Inc. under Federal Rules of Bankruptcy Procedure Rule 9019; (B) Establishing the Extent and Priority of the Security Interest of CSE Mortgage, LLC in Accordance with the Proposed Settlement; (C) Compelling Scroggins & Williamson, P.C. to Turn Over Property of the Estate; (D) Authorizing the Chapter 7 Trustee for the Bankruptcy Estate of Superior Healthcare Investors to Turn Over Property to Trustee; and (E) Authorizing Trustee to Make Certain Distributions of Property of the Estate in Accordance with the Proposed Settlement* by first class United States mail on the following persons or entities at the addresses stated:

David S. Weidenbaum
Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

S. Gregory Hays
Hays Financial Consulting, LLC
3343 Peachtree Road, NE, Suite 200
Atlanta, GA 30326

Cathy L. Scarver
P. O. Box 672587
Marietta, GA 30006

Ashley Reynolds Ray
Scroggins & Williamson
1500 Candler Building
127 Peachtree Street, NE
Atlanta, GA 30303

G. Frank Nason, IV
Lamberth, Cifelli, Ellis & Nason, P.A.
1117 Perimeter Center West
Suite W 212
Atlanta, GA  30338

HP/Superior, Inc.
5174 McGinnis Ferry Road
Suite 195
Alpharetta, GA 30005

Kevin A. Stine
Baker Donelson Bearman
Monarch Plaza, Suite 1600
3414 Peachtree Road, NE
Atlanta, GA 30326

Internal Revenue Service
Insolvency Unit
401 West Peachtree Street
Stop 335-D
Atlanta, GA 30308

Department of Justice - Tax Division
Attn: Chief, Civil Trial Section
Southern Region
P.O. Box 14198
Ben Franklin Station
Washington, D.C. 20044

United States Attorney General
Main Justice Building
10th and Constitution Avenue, NW
Washington, D.C. 20530

U.S. Attorney
Northern District of Georgia
Civil Division, Attn: Civil Clerk
600 Richard B. Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303

Lisa Johnson
Bankruptcy Specialist
Internal Revenue Service
401 W Peachtree ST, NW
M/S 334-D
Atlanta, GA 30308

F. Mark Bromley
Wisconsin Dept. of Justice
17 West Main Street
P. O. Box 7857
Madison, WI 53707-7857

Wisconsin Department of Revenue
Special Procedures Unit
PO Box 8901
Madison, WI 53708-8901

Hiram Cutting
Wisconsin Department of Revenue
Special Procedures Unit
PO Box 8901
Madison, WI 53708-8901

The Stark Collection Agency Inc.
PO Box 45710
Madison, WI 53744-5710

State of Wisconsin, DWD – UI
PO Box 8914
Madison, WI 53708

Ariane Daniels
State of Wisconsin, DWD – UI
PO Box 8914
Madison, WI 53708

Badger Acquisition of Minnesota
d/b/a Omnicare of Minnesota
900 Omnicare Center
201 East Fourth Street
Cincinnati, OH 45202

JoAnn Billman
Omnicare, Inc.
900 Omnicare Center
201 East Fourth Street
Cincinnati, OH 45202

This 17th day of June, 2016

_/s/ Michael J. Bargar_
Michael J. Bargar
Georgia Bar No. 645709

8974543v1