UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| HP/SUPERIOR, INC. | : | CASE NO. 14-71797 - PWB |
| | : | |
| Debtor. | : | |

**MOTION FOR ORDER: (A) AUTHORIZING SETTLEMENT BETWEEN TRUSTEE AND SEVERAL SUBSIDIARIES OF OMNICARE, INC. UNDER RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; (B) ESTABLISHING THE EXTENT AND PRIORITY OF THE SECURITY INTEREST OF BADGER ACQUISITION OF MINNESOTA, LLC IN ACCORDANCE WITH THE PROPOSED SETTLEMENT; AND (C) AUTHORIZING TRUSTEE TO MAKE CERTAIN DISTRIBUTIONS OF PROPERTY OF THE ESTATE IN ACCORDANCE WITH THE PROPOSED SETTLEMENT**

COMES NOW S. Gregory Hays, Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate (the "**Bankruptcy Estate**") of HP/Superior, Inc. ("**Debtor**"), by and through the undersigned counsel, and files this *Motion for Order: (A) Authorizing Settlement Between Trustee and Several Subsidiaries of Omnicare, Inc. under Rule 9019 of the Federal Rules of Bankruptcy Procedure; (B) Establishing the Extent and Priority of the Security Interest of Badger Acquisition of Minnesota, LLC in Accordance with the Proposed Settlement; and (C) Authorizing Trustee to Make Certain Distributions of Property of the Estate in Accordance with the Proposed Settlement* (the "**Settlement Motion**"). In support of the Settlement Motion, Trustee respectfully shows the Court as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over this Settlement Motion under 28 U.S.C. §§ 157 and 1334. Venue of this case in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought in this Settlement Motion is Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and 11 U.S.C. § 363.  This

Settlement Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

**Background**

2.      Badger Acquisition of Minnesota, LLC d/b/a Omnicare of Minnesota

("**Omnicare**"); Williamson Drug Company, Incorporated ("**Williamson Drug**"); NCS

Healthcare of Kansas, LLC ("**NCS Kansas**"); NCS Healthcare of Illinois, LLC ("**NCS Illinois**");

Omnicare Pharmacies of Pennsylvania West, LLC ("**Omnicare Pennsylvania**"); Omnicare

Pharmacy of Tennessee, LLC ("**Omnicare Tennessee**");  Neighborcare Pharmacy of Virginia,

LLC ("**Neighborcare Virginia**");  Omnicare Pharmacy of Texas 1, LP ("**Omnicare Texas 1**");

Omnicare Pharmacy of Texas 2, LP ("**Omnicare Texas 2**"); Omnicare of New York, LLC

("**Omnicare New York**"); and Neighborcare Pharmacy Services, Inc. ("**Neighborcare**

**Pharmacy**", and together with Omnicare, Williamson Drug, NCS Kansas, NCS Illinois,

Omnicare Pennsylvania, Omnicare Tennessee, Neighborcare Virginia, Omnicare Texas 1,

Omnicare Texas 2, and Omnicare New York, the "**Plaintiffs**") are subsidiaries of Omnicare, Inc.

3.      On November 3, 2014 (the "**Petition Date**"), Debtor filed a voluntary petition for

relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.

(as amended, modified, or supplemented, the "**Bankruptcy Code**") in the United States

Bankruptcy Court for the Northern District of Georgia, Atlanta Division ("**Bankruptcy Court**"),

initiating Chapter 11 Case No. 14-71797-PWB (the "**Bankruptcy Case**").

4.      On January 6, 2015 (the "**SHI Petition Date**"), Superior Healthcare Investors,

Inc. ("**SHI**") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code,

initiating Case No. 15-50439-PWB in the Bankruptcy Court (the "**SHI Bankruptcy Case**").

5.      On February 3, 2015, the Bankruptcy Court entered an order [Doc. No. 59; Case No. 14-71797-PWB] authorizing the joint administration of the Bankruptcy Case and the SHI Bankruptcy Case for procedural purposes only under 11 U.S.C. § 1015(b).

6.      On October 27, 2015, the Bankruptcy Court entered an order [Doc. No. 141; Case No. 14-71797-PWB] directing the appointment of Chapter 11 trustees on behalf of Debtor and SHI.

7.      On October 30, 2015, the Bankruptcy Court entered an order [Doc. No. 146; Case No. 14-71797-PWB] approving Trustee as Chapter 11 Trustee for Debtor, and on the same day the Bankruptcy Court entered an order [Doc. No. 23; Case No 15-50439-PWB] appointing Cathy L. Scarver ("**Ms. Scarver**") as Chapter 11 Trustee for SHI.

8.      On November 17, 2015, the Court entered an order [Doc. No. 168; Case No. 14-71797-PWB] converting the Bankruptcy Case and the SHI Bankruptcy Case from cases under Chapter 11 to cases under Chapter 7 of the Bankruptcy Code effective as of November 4, 2015, and severing their joint administration.

9.      On November 23, 2015, the United States Trustee appointed Trustee as the Chapter 7 Trustee in the Bankruptcy Case.  [Doc. No. 170; Case No. 14-71797-PWB].  Trustee held and concluded the Section 341 meeting of creditors on January 12, 2016, and Trustee is now the permanent Chapter 7 Trustee in the Bankruptcy Case.

10.     Prior to the Petition Date, and for the majority of the time that the Bankruptcy Case was pending as a Chapter 11 case, Debtor operated a long-term nursing home facility located in the City of Superior, Douglas County Wisconsin on real property owned by SHI, which Debtor leased from SHI.

11.     On February 25, 2016, the State of Wisconsin turned over to Trustee $2,851,208.68 from Medicaid reimbursements that the State of Wisconsin had been withholding from Debtor because of asserted unpaid bed tax assessments (the "**Medicaid Funds**").

12.     On July 19, 2016, the Bankruptcy Court entered an order [Doc. No. 209; Case No. 14-71797-PWB] approving a settlement agreement between Trustee, Ms. Scarver, and CSE Mortgage LLC ("**CSE**") and through which, among other things: (a) it was found and determined that CSE held a first priority security interest in the assets of the Bankruptcy Estate, including the Medicaid Funds,  in the amount of $755,677.20 (the "**CSE First Priority Security Interest**"); (b) Trustee agreed to pay $559,889.50 to CSE (the "**CSE Payment**") on account of the CSE First Priority Security Interest; and (c) CSE granted the Bankruptcy Estate a carve-out from the CSE First Priority Security Interest in the amount of $187,089.03 (the "**CSE Carve-Out**").

13.     Trustee has made the CSE Payment to CSE in the amount of $559,889.50, and the CSE First Priority Security Interest, less and except the CSE Carve-Out, has been satisfied.

14.     Following the CSE Payment, the current balance of Trustee's bank account for the Bankruptcy Estate, less and except the CSE Carve-Out in the amount of $187,089.03, is $2,175,706.02 (the "**HP/Superior Funds**").

15.     On December 8, 2014, Omnicare filed a proof of claim [Claim No. 4-1; Case No. 14-71797-PWB] in the Bankruptcy Case asserting a secured claim in the amount of $5,687,440.60 (the "**Omnicare Claim**").

16.     On March 31, 2015, Omnicare filed a second proof of claim [Claim No. 18-1; Case No. 14-71797-PWB] in the Bankruptcy Case asserting a secured claim in the amount of $6,794,531.56 (the "**Amended Omnicare Claim**").  Although it appears that the Clerk of Court

for the Bankruptcy Court inadvertently entered the Amended Omnicare Claim in the claim registry for the Bankruptcy Case with a claim number [Claim No. 18-1; Case No. 14-71797-PWB] that is separate and apart from the claim number of the Omnicare Claim [Claim No. 4-1; Case No. 14-71797-PWB], the Amended Omnicare Claim was meant as, and is, an amendment to the Omnicare Claim.

17.    The deadline to file proofs of claim after the Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code was April 24, 2016.  [Doc. No. 182].

18.    Other than Omnicare, none of the other Plaintiffs have filed a proof of claim in Debtor's Bankruptcy Case.

19.    Omnicare asserts that the basis for its purported secured claim is: (a) a security agreement (the "**Security Agreement**") entered into by Debtor, Omnicare, and affiliates of Debtor or Omnicare on or about November 16, 2010 to, among other things, secure an unpaid obligation of the Debtor arising from services rendered by Omnicare to Debtor in the original amount of $312,387.57; and (b) a judgment entered on or about January 22, 2014, in favor of the Plaintiffs and against Debtor and several of Debtor's affiliates by the United States District Court, Northern District of Georgia, Atlanta Division in the matter styled as *Williamson Drug Company, et al. v. HP/Cambridge House, Inc., et al.* (Civil Action File No. 1:12-CV-4017-TWT) (the "**Judgment**").

20.    On January 6, 2011, Omnicare, along with the other Plaintiffs, filed a UCC-1 to perfect its security interest granted by the Security Agreement in the property of Debtor and Debtor's affiliates.

21.    Debtor and several of its affiliates are obligated to the Plaintiffs, jointly and severally, as a result of the Judgment.

22.     Omnicare contends that the Amended Omnicare Claim is secured in and against all property of the Bankruptcy Estate, including the Medicaid Funds, and that it is thus entitled to the entirety of the HP/Superior Funds ("**Omnicare's Contention**").

23.     The other Plaintiffs (other than Omnicare) also contend that, even though they have not filed a claim in Debtor's Bankruptcy Case, they have a lien against all property of the Bankruptcy Estate, including the Medicaid Funds, as a result of the entry of the Judgment (the "**Plaintiffs' Contention**" and, collectively with Omnicare's Contention, the "**Contentions**").

24.     Trustee vigorously contests the Contentions and asserts that the Omnicare Claim is secured only to the extent of the consensual lien (the "**Consensual Lien**") arising from the Security Agreement and that any lien arising from the Judgment did not attach to any property of the Bankruptcy Estate, including the Medicaid Funds.

25.     As of September 11, 2016, the balance of the obligation secured by the Consensual Lien arising from the Security Agreement was $615,670.86, plus per diem interest of $150.81.

26.     Subject to Bankruptcy Court approval, Trustee and the Plaintiffs (each a "**Party**" and collectively, the "**Parties**") have reached a compromise and agreement resolving the disputes between them including the Contentions (the "**Omnicare Claim Issues**"), including the extent to which the Omnicare Claim and the Judgment are secured by property of the Bankruptcy Estate, on the terms set forth in the Settlement Agreement (defined below) and summarized in this Settlement Motion.

**The Proposed Settlement**

27.     The Parties have entered into a compromise and settlement agreement, subject to Court approval, resolving the Omnicare Claim Issues.  A true and correct copy of that agreement is attached to this Settlement Motion and incorporated herein by reference as Exhibit "A" (the "**Settlement Agreement**").   The material terms of the Settlement Agreement are outlined below:[1]

a.   Effective upon the Settlement Approval Order becoming final, Omnicare shall have a first priority security interest in and to the HP/Superior Funds but only to the extent of $615,670.86.[2]

b.   Within five (5) business days of the Settlement Approval Order becoming final, Trustee shall pay $615,670.86 (the "**Omnicare Secured Claim Payment**") to Omnicare by delivering a check made payable to "Badger Acquisition of Minnesota, LLC" in the amount of $615,670.86 to the attention of Omnicare's counsel, Lauren M. Gregory at the following address: 1075 Peachtree Street, NE, Suite 2500, Atlanta, GA 30309-3962. Trustee shall request authority from the Bankruptcy Court to make the Omnicare Secured Claim Payment in the Settlement Approval Motion.

c.   Effective upon the Settlement Approval Order becoming final, the Amended Omnicare Claim shall be allowed as a secured claim in the amount of $615,670.86 and as a non-priority general unsecured pre-petition claim in the amount of $6,178,860.70 (collectively, the "**Final Claim Amounts**").  To avoid confusion as to the amount or classification of the Amended Omnicare Claim, Omnicare shall further amend the Amended Omnicare Claim to reflect accurately the Final Claim Amounts and the classification of the Amended Omnicare Claim as a partially secured claim and as a partially general unsecured, non-priority pre-petition claim (the "**Revised Amended Omnicare Claim**") within thirty (30) days of Trustee making the Omnicare Secured Claim Payment.

d.   The Plaintiffs stipulate and agree that no lien from the Judgment is attached or was ever attached to any property of the Bankruptcy Estate, including the Medicaid Funds, and each of the Plaintiffs waive any rights,

---

[1]     The following is a summary of the Settlement Agreement and is not intended to be comprehensive.  To the extent that anything in this summary is contrary to the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

[2]     The security interest of Omnicare is technically junior to the CSE First Priority Security Interest, but the CSE First Priority Security Interest has been satisfied but for the CSE Carve-Out.

if any, to assert such a judgment lien against property of the Bankruptcy
Estate, including the Medicaid Funds.

e.  Effective upon the Settlement Approval Order becoming final, the Parties
shall grant mutual releases in favor of one and other.

## Relief Requested

28.     Trustee requests an order from the Bankruptcy Court approving the Settlement
Agreement, making the findings and determinations required under the Settlement Agreement,
and authorizing and directing the disbursements required under the Settlement Agreement.

29.     Trustee requests an order from the Bankruptcy Court finding and determining that
Omnicare has a first priority security interest in and to the HP/Superior Funds in an amount equal
to $615,670.86 in accordance with Section 2.2 of the Settlement Agreement.

30.     Trustee requests an order from the Bankruptcy Court authorizing and directing
Trustee to make the Omnicare Secured Claim Payment to Omnicare in accordance with Section
2.3 of the Settlement Agreement.

## Basis for Relief

31.     Federal Rule of Bankruptcy Procedure 9019(a) provides, in pertinent part, that
"[o]n motion by Trustee and after notice of a hearing, the court may approve a compromise or
settlement." Fed. R. Bankr. P. 9019(a).  The standard in this Circuit for determining whether to
approve a compromise or settlement pursuant to Rule 9019(a) is set forth in *Wallis v. Justice
Oaks II, Ltd.  (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990), *cert. denied*, 498 U.S.
959 (1990), in which the Eleventh Circuit stated as follows:

When a bankruptcy court decides whether to approve or disapprove a proposed
settlement, it must consider:

(a) The probability of success in the litigation; (b) the difficulties,
if any, to be encountered in the matter of collection; (c) the
complexity of the litigation involved, and the expense,

> inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1549. In making its evaluation, a court must not rest its approval of the settlement on a resolution of the ultimate factual and legal issues underlying the compromised disputes. *In re Teltronics Servs., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985). Rather, the court should consider the probable outcome of the litigation, including its advantages and disadvantages, and make a pragmatic decision based on all equitable factors. *Florida Trailer and Equip. Co. v. Deal,* 284 F.2d 567, 571 (5th Cir. 1960).[3]

32.     The proposed settlement between Trustee and the Plaintiffs is the product of arm's-length negotiations and reflects the Parties' analysis and consideration of the relevant legal, factual, and economic issues.

33.     Given the potential time and expense of litigating the Omnicare Claim Issues, including the extent to which the Omnicare Claim and Judgment are secured by property of the Bankruptcy Estate, and the contingent nature of the same, in the event that the claims that are proposed to be settled are instead prosecuted, the amount of time that such litigation will require, the potential accrual of additional post-petition interest that may be compensable under Section 506(b) of the Bankruptcy Code, the delay before the final outcome is known (including potential appeals), and the complexity and uncertain resolution of factual and legal disputes, settlement on the terms described in the Settlement Agreement is a proper exercise of Trustee's business judgment and in the best interests of the Bankruptcy Estate. In fact, Trustee estimates that litigating the Omnicare Claim Issues could take a substantial amount of time and could cost the Bankruptcy Estate a substantial amount in attorney's fees without the certainty of a favorable

---

[3]       In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

outcome.  The proposed Settlement Agreement allows the HP/Superior Bankruptcy Estate to avoid these costs.  In addition, the Bankruptcy Estate will still hold an additional $1.5 million free and clear of any lien claim of CSE or the Plaintiffs, a portion of which may be available for distribution to unsecured creditors (depending on additional litigation or settlement related to the extent, validity, and priority of other asserted secured claims), whether priority or non-priority. In summary, the proposed Settlement Agreement represents an advantageous result for the Bankruptcy Estate and clearly falls within the range of reasonableness required under *Justice Oaks*.

34.    Under the standard set forth above and for the reasons previously detailed in this Settlement Motion, Trustee requests that the Bankruptcy Court approve the Settlement Agreement.

WHEREFORE, Trustee respectfully requests that the Bankruptcy Court enter an Order:

i.      granting this Settlement Motion;

ii.     authorizing Trustee to take actions reasonably necessary to effectuate the terms of the Settlement Agreement;

iii.    finding and determining that Omnicare has a first-priority security interest in and to the HP/Superior Funds in an amount equal to $615,670.86;

iv.     authorizing and directing Trustee to make the Omnicare Secured Claim Payment in accordance with Section 2.3 of the Settlement Agreement; and

v.        granting to Trustee such other and further relief as the Court deems just and

appropriate.

Respectfully submitted, this 7th day of October, 2016.

ARNALL GOLDEN GREGORY LLP
*Attorneys for Trustee*

By:*/s/ Michael J. Bargar*
    Sean C. Kulka
    Georgia Bar No. 648919
    sean.kulka@agg.com
    Michael J. Bargar
    Georgia Bar No. 645709
    michael.bargar@agg.com

171 17th Street, NW, Suite 2100
Atlanta, GA 30363
(404) 873-8500

**EXHIBIT "A" FOLLOWS**

## SETTLEMENT AGREEMENT

This Settlement Agreement (this **"Agreement"**), dated as of October ⟋ , 2016 (the **"Effective Date"**), is entered between S. Gregory Hays, as Chapter 7 Trustee (**"Trustee"**) for the bankruptcy estate (the **"Bankruptcy Estate"**) of HP/Superior, Inc. (**"Debtor"**); Badger Acquisition of Minnesota, LLC d/b/a Omnicare of Minnesota, a Delaware limited liability company (**"Omnicare"**); Williamson Drug Company, Incorporated, a Virginia corporation (**"Williamson Drug"**); NCS Healthcare of Kansas, LLC, an Ohio limited liability company (**"NCS Kansas"**); NCS Healthcare of Illinois, LLC, an Illinois limited liability company (**"NCS Illinois"**); Omnicare Pharmacies of Pennsylvania West, LLC, a Pennsylvania limited liability company (**"Omnicare Pennsylvania"**); Omnicare Pharmacy of Tennessee, LLC, a Delaware limited liability company (**"Omnicare Tennessee"**); Neighborcare Pharmacy of Virginia, LLC, a Virginia limited liability company (**"Neighborcare Virginia"**); Omnicare Pharmacy of Texas 1, LP, a Delaware limited partnership (**"Omnicare Texas 1"**); Omnicare Pharmacy of Texas 2, LP, a Delaware limited partnership (**"Omnicare Texas 2"**); Omnicare of New York, LLC, a Delaware limited liability company (**"Omnicare New York"**); and Neighborcare Pharmacy Services, Inc., a Delaware corporation (**"Neighborcare Pharmacy"**, and together with Omnicare, Williamson Drug, NCS Kansas, NCS Illinois, Omnicare Pennsylvania, Omnicare Tennessee, Neighborcare Virginia, Omnicare Texas 1, Omnicare Texas 2, and Omnicare New York, the **"Plaintiffs"**).

## Background

1.  The Plaintiffs are each a subsidiary of Omnicare, Inc., a Delaware corporation.

2.  On November 3, 2014 (the **"Petition Date"**), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, modified, or supplemented, the **"Bankruptcy Code"**) in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (**"Bankruptcy Court"**), initiating Chapter 11 Case No. 14-71797-PWB (the **"Bankruptcy Case"**).

3.  On January 6, 2015 (the **"SHI Petition Date"**), Superior Healthcare Investors, Inc. (**"SHI"**) filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, initiating Case No. 15-50439-PWB in the Bankruptcy Court (the **"SHI Bankruptcy Case"**).

4.  On February 3, 2015, the Bankruptcy Court entered an order [Doc. No. 59; Case No. 14-71797-PWB] authorizing the joint administration of the Bankruptcy Case and the SHI Bankruptcy Case for procedural purposes only under 11 U.S.C. § 1015(b).

5.  On October 27, 2015, the Bankruptcy Court entered an order [Doc. No. 141; Case No. 14-71797-PWB] directing the appointment of Chapter 11 trustees on behalf of Debtor and SHI.

6.  On October 30, 2015, the Bankruptcy Court entered an order [Doc. No. 146; Case

Page 1 of 13

9387139v1

No. 14-71797-PWB] approving Trustee as Chapter 11 Trustee for Debtor, and on the same day the Bankruptcy Court entered an order [Doc. No. 23; Case No 15-50439-PWB] appointing Cathy L. Scarver ("**Ms. Scarver**") as Chapter 11 Trustee for SHI.

7.    On November 17, 2015, the Court entered an order [Doc. No. 168; Case No. 14-71797-PWB] converting the Bankruptcy Case and the SHI Bankruptcy Case from cases under Chapter 11 to cases under Chapter 7 of the Bankruptcy Code effective as of November 4, 2015 and severing their joint administration.

8.    On November 23, 2015, the United States Trustee appointed Trustee as the Chapter 7 Trustee in the Bankruptcy Case. [Doc. No. 170; Case No. 14-71797-PWB]. Trustee held and concluded the Section 341 meeting of creditors on January 12, 2016, and Trustee is now the permanent Chapter 7 Trustee in the Bankruptcy Case.

9.    Prior to the Petition Date, and for the majority of the time that the Bankruptcy Case was pending as a Chapter 11 case, Debtor operated a long-term nursing home facility located in the City of Superior, Douglas County Wisconsin on real property owned by SHI.

10.   On February 25, 2016, the State of Wisconsin turned over to Trustee $2,851,208.68 from Medicaid reimbursements that the State of Wisconsin had been withholding from Debtor because of unpaid bed tax assessments (the "**Medicaid Funds**").

11.   On July 19, 2016, the Bankruptcy Court entered an order [Doc. No. 209; Case No. 14-71797-PWB] approving a settlement agreement between Trustee, Ms. Scarver, and CSE Mortgage LLC and through which, among other things: (a) it was found and determined that CSE Mortgage LLC had a first priority security interest in the assets of the Bankruptcy Estate, including the Medicaid Funds,  in the amount of $755,677.20 (the "**CSE First Priority Security Interest**"); (b) Trustee agreed to pay $559,889.50 to CSE Mortgage LLC (the "**CSE Payment**") on account of the CSE First Priority Security Interest; and (c) CSE Mortgage LLC granted the Bankruptcy Estate a carve-out from the CSE First Priority Security Interest in the amount of $187,089.03 (the "**CSE Carve-Out**").

12.   Trustee has made the CSE Payment in the amount of $559,889.50, and the CSE First Priority Security Interest, less and except the CSE Carve-Out, has been satisfied.

13.   Following the CSE Payment, the current balance of Trustee's bank account for the Bankruptcy Estate, less and except the CSE Carve-Out in the amount of $187,089.03, is $2,175,706.02 (the "**HP/Superior Funds**").

14.   On December 8, 2014, Omnicare filed a proof of claim [Claim No. 4-1; Case No. 14-71797-PWB] in the Bankruptcy Case asserting a secured claim in the amount of $5,687,440.60 (the "**Omnicare Claim**").

15.   On March 31, 2015, Omnicare filed a second proof of claim [Claim No. 18-1; Case No.

14-71797-PWB] in the Bankruptcy Case asserting a secured claim in the amount of $6,794,531.56 (the "**Amended Omnicare Claim**"). Although it appears that the Clerk of Court for the Bankruptcy Court inadvertently entered the Omnicare Claim in the claim registry for the Bankruptcy Case with a claim number [Claim No. 18-1; Case No. 14-71797-PWB] that is separate and apart from the claim number of the Omnicare Claim [Claim No. 4-1; Case No. 14-71797-PWB], the Amended Omnicare Claim was meant as, and is, an amendment to the Omnicare Claim.

16.    The deadline to file proofs of claim after the Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code was April 24, 2016. [Doc. No. 182].

17.    Other than Omnicare, none of the other Plaintiffs have filed a proof of claim in Debtor's Bankruptcy Case.

18.    Omnicare asserts that the basis for its purported secured claim is: (a) a security agreement (the "**Security Agreement**") entered into by Debtor, Omnicare, and affiliates of Debtor or Omnicare on or about November 16, 2010 to, among other things, secure an unpaid obligation of the Debtor arising from services rendered by Omnicare to Debtor in the original amount of $312,387.57; and (b) a judgment entered on or about January 22, 2014 in favor of the Plaintiffs and against Debtor and several of Debtor's affiliates by the United States District Court, Northern District of Georgia, Atlanta Division in the matter styled as *Williamson Drug Company, et al. v. HP/Cambridge House, Inc., et al.* (Civil Action File No. 1:12-CV-4017-TWT) (the "**Judgment**").

19.    On January 6, 2011, Omnicare, along with the other Plaintiffs, filed a UCC-1 to perfect its security interest in the property of Debtor and Debtor's affiliates.

20.    Debtor and several of its affiliates are obligated to the Plaintiffs, jointly and severally, as a result of the Judgment.

21.    Omnicare contends that the Amended Omnicare Claim is secured in and against all property of the Bankruptcy Estate, including the Medicaid Funds, and that it is thus entitled to the entirety of the HP/Superior Funds ("**Omnicare's Contention**").

22.    The other Plaintiffs also contend that, even though they have not filed a claim in Debtor's Bankruptcy Case, they have a lien against all property of the Bankruptcy Estate, including the Medicaid Funds, as a result of the entry of the Judgment (the "**Plaintiffs' Contention**" and, collectively with Omnicare's Contention, the "**Contentions**").

23.    Trustee vigorously contests the Contentions and contends that the Omnicare Claim is secured only to the extent of the consensual lien (the "**Consensual Lien**") arising from the Security Agreement and that any lien arising from the Judgment is not attached to any property of the Bankruptcy Estate, including the Medicaid Funds.

24.    As of September 11, 2016, the balance of the obligation secured by the Consensual Lien arising from the Security Agreement was $615,670.86, plus per diem interest of

9387139v1

$150.81.

25.     Subject to Bankruptcy Court approval, Trustee and the Plaintiffs (each a **"Party"** and collectively, the **"Parties"**) have reached an agreement resolving the disputes between them (the **"Omnicare Claim Issues"**), including the extent to which the Omnicare Claim and the Judgment are secured by property of the Bankruptcy Estate, on the terms set forth herein.

Accordingly, the Parties agree as follows:

1.     **Background.**  The recitations in the above background section are incorporated into and made a part of this Agreement as if set forth fully herein.

2.     **Resolution of the Omnicare Claim Issues.**  Subject to approval of this Agreement by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), following notice and the opportunity for a hearing, the Parties agree to resolve the Omnicare Claim Issues as follows:

   2.1.   *Approval of Proposed Settlement in the Bankruptcy Case.*  Within five (5) business days after the full execution of this Agreement by each of the Parties, Trustee shall prepare and file the necessary pleadings, including, but not limited to, a motion pursuant to Rule 9019 of the Bankruptcy Rules (the **"Settlement Approval Motion"**), seeking entry of an order by the Bankruptcy Court approving the compromise and settlement set forth in this Agreement (the **"Settlement Approval Order"**).

   2.2.   *First Priority Security Interest of Omnicare in the HP/Superior Funds.*  Effective upon the Settlement Approval Order becoming final, Omnicare shall have a first priority security interest in and to the HP/Superior Funds but only to the extent of $615,670.86.  As part of the Settlement Approval Motion, Trustee will request that the Bankruptcy Court determine, as part of the Settlement Approval Order, that Omnicare has a first priority security interest in and to the HP/Superior Funds in an amount equal to $615,670.86.

   For the purposes of this Agreement, the Settlement Approval Order shall become final when it has been entered on the docket in the Bankruptcy Case and it (a) has not been reversed, stayed, modified or amended and as to which the time to appeal from, or to seek review or rehearing of, has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) if appealed from, has been affirmed (or the appeal dismissed) and the time to appeal from *such affirmance or to seek review or rehearing thereof has expired, or no further* hearing, appeal or petition for certiorari can be taken or granted.

   2.3.   *Payment by Trustee to Omnicare.*  Within five (5) business days of the Settlement Approval Order becoming final, Trustee shall pay $615,670.86 (the **"Omnicare Secured Claim Payment"**) to Omnicare by delivering a check

9387139v1

made payable to "Badger Acquisition of Minnesota, LLC" in the amount of $615,670.86 to the attention of Omnicare's counsel, Lauren M. Gregory at the following address: 1075 Peachtree Street, NE, Suite 2500, Atlanta, GA 30309-3962. Trustee shall request authority from the Bankruptcy Court to make the Omnicare Secured Claim Payment in the Settlement Approval Motion.

2.4.     *Allowance of the Amended Omnicare Claim.*  Effective upon the Settlement Approval Order becoming final, the Amended Omnicare Claim shall be allowed as a secured claim in the amount of $615,670.86 and as a non-priority general unsecured pre-petition claim in the amount of $6,178,860.70 (collectively, the **"Final Claim Amounts"**). To avoid confusion as to the amount or classification of the Amended Omnicare Claim, Omnicare shall further amend the Amended Omnicare Claim to reflect accurately the Final Claim Amounts and the classification of the Amended Omnicare Claim as a partially secured claim and as a partially general unsecured, non-priority pre-petition claim (the **"Revised Amended Omnicare Claim"**) within thirty (30) days of Trustee making the Omnicare Secured Claim Payment.

2.5.     *Stipulation that no Lien arising from the Judgment is Attached to Property of the Bankruptcy Estate.*  The Plaintiffs' stipulate and agree that no lien from the Judgment is attached or was ever attached to any property of the Bankruptcy Estate, including the Medicaid Funds, and each of the Plaintiffs waive any rights, if any, to assert such a judgment lien against property of the Bankruptcy Estate, including the Medicaid Funds.

2.6.     *Release by Omnicare in Favor of Trustee and the Bankruptcy Estate.*  Effective upon the Settlement Approval Order becoming final, except for the Revised Amended Omnicare Claim, Omnicare releases, acquits, and forever discharges Trustee and the Bankruptcy Estate from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown fixed or contingent, that Omnicare may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.7.     *Release by Williamson Drug in Favor of Trustee and the Bankruptcy Estate.*  Effective upon the Settlement Approval Order becoming final, except for the Revised Amended Omnicare Claim, Williamson Drug releases, acquits, and forever discharges Trustee and the Bankruptcy Estate from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown fixed or contingent, that Williamson Drug may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.8.     *Release by NCS Kansas in Favor of Trustee and the Bankruptcy Estate.*  Effective upon the Settlement Approval Order becoming final, except for the Revised Amended Omnicare Claim, NCS Kansas releases, acquits, and forever discharges Trustee and the Bankruptcy Estate from any and all Claims (as defined in

9387139v1

Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown fixed or contingent, that NCS Kansas may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.9. *Release by NCS Illinois in Favor of Trustee and the Bankruptcy Estate.* Effective upon the Settlement Approval Order becoming final, except for the Revised Amended Omnicare Claim, NCS Illinois releases, acquits, and forever discharges Trustee and the Bankruptcy Estate from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown fixed or contingent, that NCS Illinois may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.10. *Release by Omnicare Pennsylvania in Favor of Trustee and the Bankruptcy Estate.* Effective upon the Settlement Approval Order becoming final, except for the Revised Amended Omnicare Claim, Omnicare Pennsylvania releases, acquits, and forever discharges Trustee and the Bankruptcy Estate from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown fixed or contingent, that Omnicare Pennsylvania may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.11. *Release by Omnicare Tennessee in Favor of Trustee and the Bankruptcy Estate.* Effective upon the Settlement Approval Order becoming final, except for the Revised Amended Omnicare Claim, Omnicare Tennessee releases, acquits, and forever discharges Trustee and the Bankruptcy Estate from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown fixed or contingent, that Omnicare Tennessee may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.12. *Release by Neighborcare Virginia in Favor of Trustee and the Bankruptcy Estate.* Effective upon the Settlement Approval Order becoming final, except for the Revised Amended Omnicare Claim, Neighborcare Virginia releases, acquits, and forever discharges Trustee and the Bankruptcy Estate from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown fixed or contingent, that Neighborcare Virginia may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.13. *Release by Omnicare Texas 1 in Favor of Trustee and the Bankruptcy Estate.* Effective upon the Settlement Approval Order becoming final, except for the Revised Amended Omnicare Claim, Omnicare Texas 1 releases, acquits, and forever discharges Trustee and the Bankruptcy Estate from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown fixed or contingent, that Omnicare Texas 1

9387139v1

may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.14.    *Release by Omnicare Texas 2 in Favor of Trustee and the Bankruptcy Estate.* Effective upon the Settlement Approval Order becoming final, except for the Revised Amended Omnicare Claim, Omnicare Texas 2 releases, acquits, and forever discharges Trustee and the Bankruptcy Estate from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown fixed or contingent, that Omnicare Texas 2 may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.15.    *Release by Omnicare New York in Favor of Trustee and the Bankruptcy Estate.* Effective upon the Settlement Approval Order becoming final, except for the Revised Amended Omnicare Claim, Omnicare New York releases, acquits, and forever discharges Trustee and the Bankruptcy Estate from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown fixed or contingent, that Omnicare New York may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.16.    *Release by Neighborcare Pharmacy in Favor of Trustee and the Bankruptcy Estate.* Effective upon the Settlement Approval Order becoming final, except for the Revised Amended Omnicare Claim, Neighborcare Pharmacy releases, acquits, and forever discharges Trustee and the Bankruptcy Estate from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown fixed or contingent, that Neighborcare Pharmacy may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.17.    *Release by Trustee in Favor of the Plaintiffs.* Effective upon the Settlement Approval Order becoming final, and except for the rights, duties, and obligations created or preserved under this Agreement or the Settlement Approval Order, Trustee releases, acquits, and forever discharges the Plaintiffs from any and all Claims (as defined in Section 8 of this Agreement) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, that Trustee or the Bankruptcy Estate may have or claim to have against the Plaintiffs prior to the Effective Date.

3.    **No Admissions.**  The Parties acknowledge and agree that this Agreement is being executed and delivered as part of the compromise and settlement of disputed claims and is expressly contingent upon and subject to Bankruptcy Court approval and entry of the Settlement Approval Order.   The Parties further acknowledge and agree that this Agreement will not and may not be used or construed as an admission of any liability or responsibility to any Party or to any other persons or entities.

9387139v1

4.    **Entire Agreement; Modification.**  The Parties agree that there are no other agreements, oral or written, between or among them relating to any matters covered by this Agreement, and that this Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein.  The Parties further agree that this Agreement may not be altered, amended, or modified in any respect or particular whatsoever, except by a writing duly executed by the Parties, and that any material amendment is subject to Bankruptcy Court approval.

5.    **Voluntary Execution of Agreement.**  The Parties hereby mutually acknowledge, represent, and warrant that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, or had an opportunity to consult with legal counsel of their choosing, and that they have read, know, and understand completely the contents hereof, and that they have voluntarily executed the same.  The Parties further mutually acknowledge, represent, and warrant that they have had input into the drafting of this Agreement, or had an opportunity to provide input in its drafting, and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any one of the Parties but rather shall be given fair and reasonable interpretation based on the plain language of this Agreement and the expressed intent of the Parties.

6.    **Authority of Parties.**  The persons executing this Agreement represent and warrant to one another that they have the legal and institutional authority to do so on behalf of the person or legal entity for which they are signing.  In addition, Omnicare represents and warrants to Trustee that as of the Effective Date, Omnicare is the holder of the Amended Omnicare Claim and that no affiliate or subsidiary of Omnicare is entitled to assert or make any claim against the Debtor or the Bankruptcy Estate other than the other Plaintiffs who are releasing their claims against the Bankruptcy Estate in this Agreement.  Finally, the Plaintiffs, individually and jointly, represent and warrant to Trustee that they have not sold, transferred, or assigned their interests in the Judgment to any other person or entity.

7.    **Counterparts.**  This Agreement may be executed in one or more counterparts, each of which is an original, and all of which constitute only one agreement between the Parties.  Counterparts of this Agreement also may be exchanged via electronic transmission such as facsimile machines or computer, and any Party's signature transmitted by such electronic transmission shall be deemed to be an original signature for all purposes.

8.    **Definition of Claims.**  The term "Claims" means all claims or causes of action that were asserted or could have been brought as of the Effective Date by or on behalf of any Party to this Agreement, either directly or indirectly, in respect of, in relation to, or in *connection with the Bankruptcy Case.*

9.    **Bankruptcy Court Jurisdiction.**  The Bankruptcy Court shall retain jurisdiction over the Parties for enforcement of this Agreement and any and all disputes, controversies, or claims regarding the interpretation, validity, construction or other issue relating to or concerning this Agreement.  An action relating to, based upon, or arising from a breach of this Agreement

9387139v1

shall be brought only in the Bankruptcy Court, which shall retain exclusive jurisdiction over the subject matter and the Parties for this purpose.

10. **Georgia Law Applicable.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Georgia, without regard to its conflict of law principles.

11. **Severability.** If any provision of this Agreement is illegal or unenforceable, that provision is severed from this Agreement and the other provisions remain in force.

12. **Notices.** Any notices by Parties provided for or permitted under this Agreement, or by law, shall be in writing and shall be deemed received: (a) when personally delivered to a Party, on the date of such delivery; or (b) when sent via electronic mail to a Party at the electronic mail address set forth below, on the date of transmission, provided that the transmitting Party has no reasonable belief that the electronic mail was not delivered; or (c) when deposited in the United States Mail, certified and postage prepaid, addressed to such party at the address set forth below, three (3) days following the deposit of such notice in the mail. Notices shall be sent to the parties as follows:

   12.1. *If to Trustee*:

   > Michael J. Bargar
   > Arnall Golden Gregory LLP
   > 171 17th Street, NW, Suite 2100
   > Atlanta, GA 30363
   > michael.bargar@agg.com (electronic mail)

   12.2. *If to any of the Plaintiffs*:

   > Lauren M. Gregory
   > Seyfarth Shaw LLP
   > 1075 Peachtree Street, NE, Suite 2500
   > Atlanta, GA 30309
   > lgregory@seyfarth.com (electronic mail)

   The address to which notices are to be sent may be changed by any party by providing notice of the new address to the other Parties as provided herein.

13. **Restoration.** In the event that the Bankruptcy Court denies approval of this Agreement for any reason, including the legal determinations by the Bankruptcy Court that are required *under this Agreement, then, and in that event, unless otherwise agreed by the Parties in* writing, this Agreement shall terminate and be null and void and have no further force or effect and the Parties shall be restored to their respective factual and legal positions which existed immediately prior to execution of this Agreement.

14. **Parties to Bear Own Costs.** Each Party shall bear its own costs (including attorney's fees) incurred in connection with the negotiation, preparation, execution, and carrying out of this

9387139v1

Agreement, and any other agreements, instruments, or documents executed in accordance with the terms of this Agreement.

15.    **Time is of the Essence.**  Time is of the essence in this Agreement.


[INTENTIONALLY LEFT BLANK]

9387139v1

To evidence the Parties' agreement to this Agreement, they have executed and delivered it on the dates set forth below the signature lines, but as of the Effective Date.

**TRUSTEE HAYS**

S. Gregory Hays, as and only as
Chapter 7 Trustee for the bankruptcy estate of
HP/Superior, Inc. (Case No. 14-71797-PWB)

Dated: 10/6/2016

**BADGER ACQUISITION OF MINNESOTA, LLC**

By: _____
Name: Brent Roper
Title: VP- Financial Processes

Dated: 9/28/16

**WILLIAMSON DRUG COMPANY, INCORPORATED**

By: _____
Name: Brent Roper
Title: VP- Financial Processes

Dated: 9/28/16

**NCS HEALTHCARE OF KANSAS, LLC**

By: _____
Name: Brent Roper
Title: VP- Financial Processes

Dated: 9/28/16

Page 11 of 13

9387139v1

**NCS HEALTHCARE OF ILLINOIS, LLC**

By: _____
    Name: Brent Roper
    Title: VP- Financial Processes

Dated: 9/28/16 _____

**OMNICARE PHARMACIES OF PENNSYLVANIA WEST, LLC**

By: _____
    Name: Brent Roper
    Title: VP- Financial Processes

Dated: 9/28/16 _____

**OMNICARE PHARMACY OF TENNESSEE, LLC**

By: _____
    Name: Brent Roper
    Title: VP- Financial Processes

Dated: 9/28/16 _____

**NEIGHBORCARE PHARMACY OF VIRGINIA, LLC**

By: _____
    Name: Brent Roper
    Title: VP- Financial Processes

Dated: 9/28/16 _____

**OMNICARE PHARMACY OF TEXAS 1, LP**

By: _____
    Name: Brent Roper
    Title: VP- Financial Processes

Dated: 9/28/16 _____

9387139v1

**OMNICARE PHARMACY OF TEXAS 2, LP**

By: _____
Name: Brent Roper
Title: VP- Financial Processes

Dated: 9/28/16

**OMNICARE OF NEW YORK, LLC**

By: _____
Name: Brent Roper
Title: VP- Financial Processes

Dated: 9/28/16

**NEIGHBORCARE PHARMACY SERVICES, INC.**

By: _____
Name: Brent Roper
Title: VP- Financial Processes

Dated: 9/28/16

Page 13 of 13

9387139v1

## CERTIFICATE OF SERVICE

This is to certify that I, Michael J. Bargar, am over the age of 18 and that I have this day served a true and correct copy of the foregoing *Motion for Order: (A) Authorizing Settlement Between Trustee and Several Subsidiaries of Omnicare, Inc. under Rule 9019 of the Federal Rules of Bankruptcy Procedure; (B) Establishing the Extent and Priority of the Security Interest of Badger Acquisition of Minnesota, LLC in Accordance with the Proposed Settlement; and (C) Authorizing Trustee to Make Certain Distributions of Property of the Estate in Accordance with the Proposed Settlement* by first class United States mail on the following persons or entities at the addresses stated:

David S. Weidenbaum
Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

S. Gregory Hays
Hays Financial Consulting, LLC
3343 Peachtree Road, NE, Suite 200
Atlanta, GA 30326

Cathy L. Scarver
P. O. Box 672587
Marietta, GA 30006

Ashley Reynolds Ray
Scroggins & Williamson
One Riverside, Suite 450
4401 Northside Parkway
Atlanta, GA 30237

G. Frank Nason, IV
Lamberth, Cifelli, Ellis & Nason, P.A.
1117 Perimeter Center West
Suite W 212
Atlanta, GA  30338

HP/Superior, Inc.
5174 McGinnis Ferry Road
Suite 195
Alpharetta, GA 30005

Kevin A. Stine
Baker Donelson Bearman
Monarch Plaza, Suite 1600
3414 Peachtree Road, NE
Atlanta, GA 30326

Internal Revenue Service
Insolvency Unit
401 West Peachtree Street
Stop 335-D
Atlanta, GA 30308

Department of Justice - Tax Division
Attn: Chief, Civil Trial Section
Southern Region
P.O. Box 14198
Ben Franklin Station
Washington, D.C. 20044

United States Attorney General
Main Justice Building
10th and Constitution Avenue, NW
Washington, D.C. 20530

U.S. Attorney
Northern District of Georgia
Civil Division, Attn: Civil Clerk
600 Richard B. Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303

Lisa Johnson
Bankruptcy Specialist
Internal Revenue Service
401 W Peachtree ST, NW
M/S 334-D
Atlanta, GA 30308

F. Mark Bromley
Wisconsin Dept. of Justice
17 West Main Street
P. O. Box 7857
Madison, WI 53707-7857

Wisconsin Department of Revenue
Special Procedures Unit
PO Box 8901
Madison, WI 53708-8901

Lauren M. Gregory
Seyfarth Shaw LLP
1075 Peachtree Street, NE, Suite 2500
Atlanta, GA 30309

Hiram Cutting
Wisconsin Department of Revenue
Special Procedures Unit
PO Box 8901
Madison, WI 53708-8901

The Stark Collection Agency Inc.
PO Box 45710
Madison, WI 53744-5710

State of Wisconsin, DWD – UI
PO Box 8914
Madison, WI 53708

Ariane Daniels
State of Wisconsin, DWD – UI
PO Box 8914
Madison, WI 53708

Badger Acquisition of Minnesota
d/b/a Omnicare of Minnesota
900 Omnicare Center
201 East Fourth Street
Cincinnati, OH 45202

JoAnn Billman
Omnicare, Inc.
900 Omnicare Center
201 East Fourth Street
Cincinnati, OH 45202

This 7th day of October, 2016

*/s/ Michael J. Bargar*
Michael J. Bargar
Georgia Bar No. 645709