UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| HP/SUPERIOR, INC. | : | CASE NO. 14-71797 - PWB |
| | : | |
| Debtor. | : | |

**MOTION FOR ORDER: (A) AUTHORIZING SETTLEMENT BETWEEN TRUSTEE
AND THE INTERNAL REVENUE SERVICE UNDER FEDERAL RULES OF
BANKRUPTCY PROCEDURE RULE 9019; (B) ESTABLISHING THE EXTENT AND
PRIORITY OF THE LIEN INTEREST OF THE INTERNAL REVENUE SERVICE IN
ACCORDANCE WITH THE PROPOSED SETTLEMENT; AND (C) AUTHORIZING
TRUSTEE TO MAKE CERTAIN DISTRIBUTIONS OF PROPERTY OF THE ESTATE**

COMES NOW S. Gregory Hays, Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate
(the "**Bankruptcy Estate**") of HP/Superior, Inc. ("**Debtor**"), by and through the undersigned
counsel, and files his *Motion for Order: (A) Authorizing Settlement Between Trustee and the
Internal Revenue Service under Federal Rules of Bankruptcy Procedure Rule 9019; (B)
Establishing the Extent and Priority of the Lien Interest of the Internal Revenue Service in
Accordance with the Proposed Settlement; and (C) Authorizing Trustee to Make Certain
Distributions of Property of the Estate* (the "**Settlement Motion**"). In support of the Settlement
Motion, Trustee respectfully shows the Bankruptcy Court as follows:

**Jurisdiction and Venue**

1.      This Bankruptcy Court has jurisdiction over this Settlement Motion under 28
U.S.C. §§ 157 and 1334. Venue of this case in this District is proper under 28 U.S.C. §§ 1408
and 1409. The statutory predicate for the relief sought in this Settlement Motion is Rule 9019 of
the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). This Settlement Motion
is a core proceeding under 28 U.S.C. § 157(b)(2).

## Background

### a. General Background

2.      On November 3, 2014 (the "**Petition Date**"), Debtor filed a voluntary petition (the

"**Petition**") under Chapter 11 of Title 11 of the United States Code and initiated bankruptcy case

number 14-71797-PWB (the "**Bankruptcy Case**" or "**Case**"), in the United States Bankruptcy

Court, Northern District of Georgia, Atlanta Division (the "**Bankruptcy Court**" or "**Court**").

3.      On November 17, 2015, the Bankruptcy Court entered an order [Doc. No. 168;

Case No. 14-71797-PWB] converting the Bankruptcy Case from one under Chapter 11 to one

under Chapter 7 of the Bankruptcy Code effective as of November 4, 2015.

4.      On November 23, 2015, the United States Trustee appointed Trustee as the

Chapter 7 Trustee in the Bankruptcy Case.  [Doc. No. 170; Case No. 14-71797-PWB].  Having

conducted and concluded the Section 341 meeting of creditors in the Case on January 12, 2016,

Trustee is now the permanent Chapter 7 Trustee in the Bankruptcy Case.

### b. The Medicaid Funds

5.      On December 4, 2014, Debtor filed its *Schedule B - Personal Property* and

scheduled its interest in "Wisconsin Medicaid reimbursements" with a value of $3,002,025.00.

[Doc. No. 35, Page 22 of 63; Case No. 14-71797-PWB].

6.      On February 25, 2016, the State of Wisconsin turned over to Trustee

$2,851,208.68 from Medicaid reimbursements (the "**Medicaid Funds**") that the State of

Wisconsin had been withholding from Debtor because Debtor had not paid bed tax assessments

(the "**Bed Tax**") prior to and after the Petition Date.

7.      Upon information and belief, the amount of Medicaid Funds that Trustee received

from the State of Wisconsin was less than the scheduled amount because of normal course of

business reductions.

8.      The Medicaid Funds included $2,588,315.68 that accrued prior to the Petition Date, and $262,893.00 that accrued after the Petition Date (the "**Post-Petition Medicaid Funds**").

### c. The Secured Claim of CSE Mortgage, LLC, the Settlement, and the Carve-out

9.      After Trustee's appointment as Chapter 7 Trustee, CSE Mortgage, LLC ("**CSE Mortgage**") asserted that it had a first priority security interest in all personal and real property interests of Debtor as a result of, among other things, a certain cross-default agreement (the "**Cross-Default Agreement**") signed on or about March 30, 2007 by, among other parties, Debtor, CSE Mortgage, and Superior Healthcare Investors, Inc. ("**SHI**").  SHI and Debtor are affiliates, and their bankruptcy cases were previously jointly administered.

10.      Trustee vigorously contested that the Cross-Default Agreement granted CSE Mortgage a security interest in property of the Bankruptcy Estate.  The dispute over the extent, validity, and priority of the security interest purportedly granted by the Cross-Default Agreement, if any, is hereinafter referred to as the "**CSE Cross-Default Issue**."

11.      On June 17, 2016, Trustee filed a settlement motion [Doc. No. 201; Case No. 14-71797-PWB] (the "**CSE Settlement Motion**") in the Bankruptcy Case seeking, among other things, an order from the Court approving a settlement agreement (the "**CSE Settlement Agreement**") between Trustee and CSE Mortgage, among others, through which CSE and Trustee resolved the CSE Cross-Default Issue, as follows: (a) CSE Mortgage would have a first priority security interest in the Medicaid Funds and other assets in the amount of $755,677.20; (b) the Bankruptcy Estate would have a $187,089.03 carve-out from the CSE First Priority Security Interest; and (c) Trustee would pay $559,889.50 in satisfaction of the CSE First Priority

Security Interest.

12.     On July 19, 2016, the Court entered an order [Doc. No. 209] approving the CSE Settlement Motion, and through which, among other things: (a) it was found and determined that CSE Mortgage held a first priority security interest in the assets of the Bankruptcy Estate, including the Medicaid Funds, in the amount of $755,677.20 (the "**CSE First Priority Security Interest**"); (b) Trustee was authorized to pay $559,889.50 to CSE Mortgage (the "**CSE Secured Claim Payment**") on account of the CSE First Priority Security Interest; and (c) CSE Mortgage granted the Bankruptcy Estate a carve-out from the CSE First Priority Security Interest in the amount of $187,089.03 (the "**CSE Carve-Out**").

13.     Trustee has made the CSE Secured Claim Payment and is holding the CSE Carve-Out to be distributed under Section 726 of the Bankruptcy Code, and the CSE First Priority Security Interest has been satisfied, less and except the CSE Carve-Out, in accordance with the terms of the CSE Settlement Agreement.

### d. The Second Position Secured Claim of Omnicare, Inc. and the Settlement

14.     On December 8, 2014, Omnicare, Inc. ("**Ominicare**") filed a proof of claim [Claim No. 4-1; Case No. 14-71797-PWB] in the Bankruptcy Case asserting a secured claim in the amount of $5,687,440.60 (the "**Omnicare Claim**").

15.     On March 31, 2015, Omnicare filed a second proof of claim [Claim No. 18-1; Case No. 14-71797-PWB] in the Bankruptcy Case asserting a secured claim in the amount of $6,794,531.56 (the "**Amended Omnicare Claim**").  Although it appears that the Clerk of Court for the Bankruptcy Court inadvertently entered the Amended Omnicare Claim in the claim registry for the Bankruptcy Case with a claim number [Claim No. 18-1; Case No. 14-71797-PWB] that is separate and apart from the claim number of the Omnicare Claim [Claim No. 4-1;

Case No. 14-71797-PWB], the Amended Omnicare Claim was meant as, and is, an amendment to the Omnicare Claim.

16.    Omnicare asserted that the basis for its purported secured claim is: (a) a security agreement (the "**Omnicare Security Agreement**") entered into by Debtor, Omnicare, and affiliates of Debtor and/or Omnicare on or about November 16, 2010 to, among other things, secure an unpaid obligation of the Debtor arising from services rendered by Omnicare to Debtor in the original amount of $312,387.57; and (b) a judgment entered on or about January 22, 2014, in favor of Omnicare and several of its affiliates or subsidiaries (collectively, the "**Plaintiffs**") and against Debtor and several of Debtor's affiliates by the United States District Court, Northern District of Georgia, Atlanta Division in the matter styled as *Williamson Drug Company, et al. v. HP/Cambridge House, Inc., et al.* (Civil Action File No. 1:12-CV-4017-TWT) (the "**Judgment**").

17.    On January 6, 2011, Omnicare, along with the other Plaintiffs, filed a UCC-1 to perfect its security interest granted by the Security Agreement in the property of Debtor and Debtor's affiliates.

18.    Debtor and several of its affiliates were obligated to the Plaintiffs, jointly and severally, as a result of the Judgment.

19.    Omnicare contended that the Amended Omnicare Claim was secured in and against all property of the Bankruptcy Estate, including the Medicaid Funds, and that it was thus entitled to the entirety of the Medicaid Funds ("**Omnicare's Contention**").

20.    The other Plaintiffs (other than Omnicare) also contended that, even though they had not filed a claim in Debtor's Bankruptcy Case, they had a lien against all property of the Bankruptcy Estate, including the Medicaid Funds, as a result of the entry of the Judgment

(the "**Plaintiffs' Contention**" and, collectively with Omnicare's Contention, the "**Contentions**").

21.     These alleged secured interests and liens of Omnicare and the other Plaintiffs would have been in second priority behind the interest of CSE Mortgage had Trustee not made the CSE Secured Claim Payment.

22.     Trustee vigorously contested the Contentions and asserted that the Omnicare Claim was secured only to the extent of the consensual lien (the "**Consensual Lien**") arising from the Omnicare Security Agreement and that any lien arising from the Judgment did not attach to any property of the Bankruptcy Estate, including the Medicaid Funds.

23.     As of September 11, 2016, the balance of the obligation secured by the Consensual Lien arising from the Omnicare Security Agreement was $615,670.86, plus per diem interest of $150.81.

24.     On October 7, 2016, Trustee filed a second settlement motion [Doc. No. 214] (the "**Omnicare Settlement Motion**") seeking approval of a settlement agreement between Trustee, on the one hand, and the Plaintiffs, on the other hand (the "**Omnicare Settlement Agreement**").

25.     On November 7, 2016, the Bankruptcy Court entered an order [Doc. No. 232] (the "**Omnicare Settlement Order**"), approving the Omnicare Settlement Motion and Omnicare Settlement Agreement, through which, among other things: (a) it was found and determined that Omnicare held a first priority security interest in the assets of the Bankruptcy Estate, including the Medicaid Funds, in the amount of $615,670.86 (the "**Omnicare First Priority Security Interest**"); (b) Trustee agreed to pay $615,670.86 to Omnicare (the "**Omnicare Secured Claim Payment**") on account of the Omnicare First Priority Security Interest; and (c) the Plaintiffs agreed that no lien from the Judgment was ever attached to any property of the

Bankruptcy Estate, including the Medicaid Funds.

26.    Trustee has made the Omnicare Secured Claim Payment and the Omnicare First Priority Security Interest has been satisfied, in accordance with the terms of the Omnicare Settlement Agreement.

### e. Summary of Recovery of Medicaid Funds, the Results of the CSE Settlement Agreement, and the Omnicare Settlement Agreement

27.    As a result of the recovery of the Medicaid Funds and other recoveries in this Bankruptcy Case, including additional recoveries resulting from the CSE Settlement Agreement, there was $2,660,162.48 in the Bankruptcy Estate to which the security interests of CSE Mortgage and Omnicare, or any other liens, could attach (the "**Encumbered Funds**").

28.    Notably, this $2,660,162.48 in Encumbered Funds does not include the $262,893.00 in Post-Petition Medicaid Funds because the Post-Petition Medicaid Funds were generated by Debtor after the Petition Date.

29.    Following Trustee's making the CSE Secured Claim Payment, the CSE Carve-out, and Trustee's making the Omnicare Secured Claim Payment, there is currently $1,297,513.09 remaining from the Encumbered Funds in the Bankruptcy Estate to which junior liens may attach (the "**Remaining Encumbered Funds**").

### f. Other Claims Filed as Secured

30.    After Trustee paid the CSE Secured Claim Payment and the Ominicare Secured Claim Payment, there were four other filed claims through which entities claimed a secured interest in property of the Bankruptcy Estate, namely: (a) the Internal Revenue Service ("**IRS**") through Claim No. 1-4 (the "**First IRS Proof of Claim**") in the amount of $3,608,542.86 with $1,957,835.17 claimed as secured; (b) the State of Wisconsin, DWD – UI (the "**State of Wisconsin**") through amended Claim No. 15-2 in the amount of $396,161.56 with $361,174.48

claimed as secured (the "**Wisconsin Proof of Claim**"); (c) the State of Wisconsin through amended Claim No. 9-2; and (d) the City of Superior, Wisconsin through Claim No. 13-1.

31.    Based on a first in time, first in right principle of law, Trustee believes that the priority of these claims follows

| Lien Position | POC Claim # | Party | POC Amount | Lien Amt | Comment | Date Secured |
|---|---|---|---|---|---|---|
| 1 | 15-2 | State of Wisconsin, DWD-UI | $361,174.48 | $48,944.38 | Tax Warrant # 11UC61, Douglas Co. | 08/15/11 |
| 2 | 1-4 | Internal Revenue Service | $1,957,835.17 | $1,546,335.28 | Lien filed in Fulton Co, Forsyth Co & Douglas Co | 10/21/11 |
| 3 | 15-2 | State of Wisconsin, DWD-UI | $361,174.48 | $18,608.59 | Tax Warrant # 11UC82, Douglas Co. | 10/31/11 |
| 4 | 15-2 | State of Wisconsin, DWD-UI | $361,174.48 | $11,222.39 | Tax Warrant # 12UC3, Douglas Co. | 01/03/12 |
| 5 | 1-4 | Internal Revenue Service | $1,957,835.17 | $411,499.89 | Various Liens filed between Jan 2012 and July 2012 | Various |
| 6 | 15-2 | State of Wisconsin, DWD-UI | $361,174.48 | $5,914.85 | Tax Warrant # 12UC22, Douglas Co. | 04/03/12 |
| 7 | 13-1 | City of Superior | $12,555.61 | $12,555.61 | Judgment Lien. POC is a priority tax claim | 07/20/12 |
| 8 | 15-2 | State of Wisconsin, DWD-UI | $361,174.48 | $81,162.18 | Tax Warrant # 12UC105, Douglas Co. | 12/27/12 |
| 9 | 15-2 | State of Wisconsin, DWD-UI | $361,174.48 | $41,152.74 | Tax Warrant # 13UC47, Douglas Co. | 07/18/13 |
| 10 | 9-2 | Wisconsin Department of Rev | $273,533.76 | $273,533.76 | Various Liens filed on and after 7/25/13. | 07/25/13 |
| 11 | 15-2 | State of Wisconsin, DWD-UI | $361,174.48 | $39,979.38 | Tax Warrant # 14UC4, Douglas Co. | 01/14/14 |
| 12 | 15-2 | State of Wisconsin, DWD-UI | $361,174.48 | $12,093.27 | Tax Warrant # 14UC34, Douglas Co. | 04/14/14 |
| 13 | 15-2 | State of Wisconsin, DWD-UI | $361,174.48 | $44,040.77 | Tax Warrant # 14UC62, Douglas Co. | 07/14/14 |
| 14 | 15-2 | State of Wisconsin, DWD-UI | $361,174.48 | $39,213.67 | Tax Warrant # 14UC85, Douglas Co. | 10/20/14 |

#### g. The Adversary Proceeding against the IRS

32.    On May 5, 2021, Trustee filed a complaint (the "**Complaint**") against the IRS and initiated the adversary proceeding styled as *Hays v. Department of Treasury – Internal Revenue Service* (Adv. Pro. No. 21-5048-PWB) (the "**Adversary Proceeding**"), in which Trustee has, among other things, asked the Court to determine the extent, validity, and priority of the lien of the IRS in the Remaining Encumbered Funds and Post-Petition Medicaid Funds (the "**Lien Issues**").

33.    On July 28, 2021, the Court entered an order [Adv. Pro. Doc. No. 7], authorizing Trustee and the IRS to mediate the issues raised in the Adversary Proceeding.

#### The Proposed Settlement

34.    Following a mediation hosted by the Honorable Mary Grace Diehl (the "**Mediation**"), Trustee and the IRS (collectively, the "**Parties**") reached an agreement (the

17404673v1

"**Settlement Agreement**") to resolve the Lien Issues raised by Trustee, subject to Bankruptcy

Court approval.  The terms of the Settlement Agreement follow:

a. Effective upon any order approving the Settlement Agreement (the "**Settlement Approval Order**") becoming a final order, the IRS shall have a secured claim and lien in the Remaining Encumbered Funds in the amount of $1,248,000.00 (the "**IRS Secured Claim**").  For the purposes of the Settlement Agreement, the Settlement Approval Order becomes final when it has been entered on the docket in the Bankruptcy Case and it (a) has not been reversed, stayed, modified or amended and as to which the time to appeal from, or to seek review or rehearing of, has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) if appealed from, has been affirmed (or the appeal dismissed) and the time to appeal from such affirmance or to seek review or rehearing thereof has expired, or no further hearing, appeal or petition for certiorari can be taken or granted.

b. Within five (5) business days of the Settlement Approval Order becoming a final order, Trustee shall pay the United States of America $900,000.00 of the IRS Secured Claim from the Remaining Encumbered Funds (the "**IRS Secured Claim Payment**").

c. Effective upon the Settlement Approval Order becoming a final order, the IRS grants and conveys to the Bankruptcy Estate a carve-out from the IRS Secured Claim in the amount of $348,000.00 (the "**Estate Carve-Out**"). It is the intent of the Parties that upon the Settlement Approval Order becoming final, Trustee shall be entitled to distribute the liquidated Estate Carve-Out in the amount of $348,000.00 in accordance with 11 U.S.C. § 726.

d. Following the IRS Secured Claim Payment, and except for the Estate Carve-Out which will be free and clear and available for Trustee to distribute under 11 U.S.C. § 726, the IRS Secured Claim shall be fully satisfied.  However, the remainder of the First IRS Proof of Claim in the amount of $2,360,542.86 (or, the total claim amount of $3,608,542.86 less the IRS Secured Claim of $1,248,000.00) shall be allowed and paid in accordance with the distribution scheme set forth in the Bankruptcy Code.

e. Effective upon the Settlement Approval Order becoming a final order, the IRS proof of claim [Claim No. 19-2] (the "**Second IRS Proof of Claim**") for post-petition withholding taxes shall be allowed as a Chapter 11 administrative expense claim, and the IRS will receive payment on the Second IRS Proof of Claim on a pro-rata basis with other holders of allowed Chapter 11 administrative expense claims.

17404673v1

f.   Effective upon the Settlement Approval Order becoming a final order, the IRS shall not have a pre-petition lien or secured claim in the Post-Petition Medicaid Funds.

g.   Within ten (10) business days of the Settlement Approval Order becoming a final order, Trustee and the IRS shall file a stipulation dismissing with prejudice the Adversary Proceeding.

**Relief Requested**

35.     By this Settlement Motion, Trustee requests that the Bankruptcy Court approve the Settlement Agreement between the Parties.

36.     Trustee further requests an order from the Bankruptcy Court finding and determining that the IRS has a secured claim and lien in the Remaining Encumbered Funds in an amount equal to $1,248,000.00.

37.     Trustee requests an order from the Bankruptcy Court approving the Estate Carve-Out in the amount of $348,000.00.

38.     Finally, Trustee requests an order from the Bankruptcy Court authorizing Trustee to make the IRS Secured Claim Payment in the amount of $900,000.00.

**Basis for Relief**

39.     Federal Rule of Bankruptcy Procedure 9019(a) provides, in pertinent part, that "[o]n motion by Trustee and after notice of a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The standard in this Circuit for determining whether to approve a compromise or settlement pursuant to Rule 9019(a) is set forth in *Wallis v. Justice Oaks II, Ltd.  (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990), in which the Eleventh Circuit stated as follows:

When a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:

17404673v1

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1549.  In making its evaluation, a court must not rest its approval of the settlement on a resolution of the ultimate factual and legal issues underlying the compromised disputes.  *In re Teltronics Servs., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985).  Rather, the court should consider the probable outcome of the litigation, including its advantages and disadvantages, and make a pragmatic decision based on all equitable factors.  *Florida Trailer and Equip. Co. v. Deal,* 284 F.2d 567, 571 (5th Cir. 1960).[1]

40.     The proposed settlement between the Parties is the product of arms' length negotiations at the judicially hosted Mediation and reflects the Parties' analysis and consideration of the relevant legal, factual, and economic issues.

41.     Given the potential time and expense of litigating the Lien Issues, and the contingent nature of the same, in the event that the claims that are proposed to be settled are instead prosecuted, the amount of time that such litigation will require, the delay before the final outcome is known (including potential appeals), and the complexity and uncertain resolution of factual and legal disputes, settlement under the terms of the Settlement Agreement is a proper exercise of Trustee's business judgment and in the best interests of the Bankruptcy Estate.  In fact, Trustee Hays estimates that litigating the Lien Issues could take years and could cost the Bankruptcy Estate hundreds of thousands of dollars in additional administrative expense without any certainty of a favorable outcome.  The proposed Settlement Agreement allows the

---

[1]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

Bankruptcy Estate to avoid these costs and creates $348,000.00 in free and clear funds that Trustee will distribute to creditors in accordance with the priority scheme established by the Bankruptcy Code.  Finally after Trustee makes the IRS Secured Claim Payment, and after the Estate Carve-Out, $49,513.09 of the Remaining Encumbered Funds will be available to pay the secured claim of the State of Wisconsin arising through Claim No. 15-2.

42.     Of the utmost importance, Trustee estimates that the proposed Settlement Agreement will allow him to make a meaningful distribution to holders of Chapter 11 administrative expense claims, something that seemed *highly unlikely* when Trustee was first appointed to this Case and inherited a Bankruptcy Estate from the former debtor-in-possession that had relatively *di minimis* assets and numerous secured creditors (to the tune of millions of dollars) that claimed secured interests in all property of the Bankruptcy Estate.

43.     Under the standard set forth above and for the reasons previously detailed in this Settlement Motion, Trustee urges that this Bankruptcy Court approve the Settlement Agreement.

44.     The United States has reviewed this Settlement Motion and concurs.

WHEREFORE, Trustee respectfully requests that the Bankruptcy Court enter an Order:

a.      granting this Settlement Motion;

b.      approving the Settlement Agreement;

c.      authorizing Trustee to take actions reasonably necessary to effectuate the terms of the Settlement Agreement;

d.      finding and determining that the IRS has a secured claim and lien against the Remaining Encumbered Funds in an amount equal to $1,248,000.00;

e.      approving the Estate Carve-Out in the amount of $348,000.00;

f.      authorizing and directing Trustee to make the IRS Secured Claim Payment; and

g.      granting to the Parties such other and further relief as the Court deems just and

appropriate.

Respectfully submitted, this 24th day of November, 2021.

ARNALL GOLDEN GREGORY LLP
*Attorneys for Trustee*

By: */s/ Michael J. Bargar*
      Michael J. Bargar
      Georgia Bar No. 645709
      michael.bargar@agg.com

171 17th Street, NW, Suite 2100
Atlanta, GA 30363
(404) 873-8500

17404673v1

## CERTIFICATE OF SERVIC

This is to certify that I, Michael J. Bargar, am over the age of 18 and that I have this day served a true and correct copy of the foregoing *Motion for Order: (A) Authorizing Settlement Between Trustee and the Internal Revenue Service under Federal Rules of Bankruptcy Procedure Rule 9019; (B) Establishing the Extent and Priority of the Lien Interest of the Internal Revenue Service in Accordance with the Proposed Settlement; and (C) Authorizing Trustee to Make Certain Distributions of Property of the Estate* by first class United States mail on the following persons or entities at the addresses stated:

David S. Weidenbaum
Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

S. Gregory Hays
Hays Financial Consulting, LLC
2964 Peachtree Rd, NW, Suite 555
Atlanta, GA 30305

Cathy L. Scarver
P. O. Box 672587
Marietta, GA 30006

Ashley Reynolds Ray
Scroggins & Williamson One Riverside, Suite 450
4401 Northside Parkway
Atlanta, GA 30237

G. Frank Nason, IV
Lamberth, Cifelli, Ellis & Nason, P.A.
1117 Perimeter Center West
Suite W 212
Atlanta, GA  30338

HP/Superior, Inc.
5174 McGinnis Ferry Road
Suite 195
Alpharetta, GA 30005

Aaron Charles Brownell
US Department of Justice Tax Division
P.O. Box 14198
Washington, DC 14198

17404673v1

Kevin A. Stine
Baker Donelson Bearman
Monarch Plaza, Suite 1600
3414 Peachtree Road, NE
Atlanta, GA 30326

Internal Revenue Service
Insolvency Unit
401 West Peachtree Street
Stop 335-D
Atlanta, GA 30308

Department of Justice - Tax Division
Attn: Chief, Civil Trial Section
Southern Region
P.O. Box 14198
Ben Franklin Station
Washington, D.C. 20044

United States Attorney General
Main Justice Building
10th and Constitution Avenue, NW
Washington, D.C. 20530

U.S. Attorney
Northern District of Georgia
Civil Division, Attn: Civil Clerk
600 Richard B. Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303

Lisa Johnson
Bankruptcy Specialist
Internal Revenue Service
401 W Peachtree ST, NW
M/S 334-D
Atlanta, GA 30308

F. Mark Bromley
Wisconsin Dept. of Justice
17 West Main Street
P. O. Box 7857
Madison, WI 53707-7857

17404673v1

Wisconsin Department of Revenue
Special Procedures Unit
PO Box 8901
Madison, WI 53708-8901

Hiram Cutting
Wisconsin Department of Revenue
Special Procedures Unit
PO Box 8901
Madison, WI 53708-8901

The Stark Collection Agency Inc.
PO Box 45710
Madison, WI 53744-5710

The Stark Collection Agency
6425 Odana RD Suite 22
PO Box 45710
Madison, WI 53744-5710

State of Wisconsin, DWD – UI
PO Box 8914
Madison, WI 53708

Ariane Daniels
State of Wisconsin, DWD – UI
PO Box 8914
Madison, WI 53708


This 24th day of November, 2021.

                                        */s/ Michael J. Bargar*
                                        Michael J. Bargar
                                        Georgia Bar No. 645709

17404673v1